# THOMAS C. CHAPPELL ET AL. *vs.* PHILIP C. CLARKE ET AL.

*Appeal—Jurisdiction of Court to Remove Absent Trustee—Service of Process—Protection of Trust Estate.*

No appeal lies from an order directing a trustee to show cause within a certain time why he should not be removed from office, because it is not a final order.

When part of the property belonging to a trust estate is in this State, the trust having been created by a will probated in this State, a Court of equity is empowered under Code, Art. 16, sec. 203, to require the trustee to give bond and in default thereof to remove him from office and appoint another trustee to take charge of the property; and the fact that the trustee leaves the State does not affect the jurisdiction of the Court, but notice of the proceedings may be given to the absent trustee by personal service without the State as is authorized by Code, Art. 16, sec. 114.

When property is bequeathed to a trustee to hold for the benefit of a person for life with remainders over, the remaindermen are entitled to ask a Court of equity to protect the estate by removing the trustee for cause, although the *cestui que trust* for life does not unite in the petition.

Appeals from a decree and orders of Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BOYD, SCHMUCKER and JONES, JJ.

*W. D. Davidge, Jr.*, for Fannie Chappell Clarke.

*Wm. J. O'Brien, Jr.*, and *Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

There are seven appeals in this record—four of which were taken by Thomas C. Chappell, trustee, and the others by Mrs. Clarke. The orders appealed from were passed in the same case that is reported in 92 Md. 98, *Chappell* v. *Clarke*.

The original bill was filed by Mrs. Clarke and her husband, Mr. and Mrs. Stiles and the three infant children of Mr. and Mrs. Clarke by their father as next friend, against Thomas C. Chappell, trustee. They prayed that the Court assume jurisdiction over the trust created by the will of Phillip S. Chappell, which left sixty thousand dollars to Thomas C. Chappell in trust for Fannie Chappell (now Mrs. Clarke) during her life, and after her death "to divide said trust property and the remaining proceeds thereof equally *per stirpes* and not *per capita*, among her children and their descendants, if she shall have left any, and if she shall have left no children or descendants then to the absolute use of the said Thomas C. Chappell," etc. It further prayed that the trustee be required to file an account, to give security for the faithful administration of the trust reposed in him, and that he be enjoined from receiving or investing any of the funds of said trust estate until the Court had assumed jurisdiction and the defendant had filed a bond. A subpœna was issued for the defendant which was returned summoned. An order was also passed assuming jurisdiction of the trust, requiring the trustee to give bond and enjoining him until he did so from receiving, collecting or in any manner taking into his hands or under his control any more of the trust funds, etc. Calvin T. Davison filed a petition on the 11th day of May, 1900, asking permission to pay the sum of $20,000 which his firm owed to the estate into Court and an order was passed authorizing him to do so. The case was reversed by this Court because copies of the will and of the mortgage were not filed as required by Code Art. 5, section 120, before the orders were passed, and the cause was remanded.

The copy of the will was filed on May 14, 1900, and subsequently a copy of the mortgage referred to in the previous opinion of this Court. Two days after the original bill was filed Mrs. Clarke and Mr. and Mrs. Stiles filed an order with the clerk directing the bill to be dismissed as to them and a request to Mr. O'Brien, who had appeared as solicitor for the plaintiffs, to strike out his appearance for them, alleging that

the cause had been instituted without their consent or authority. On January 30, 1901, which was after the previous case had been decided by this Court, a petition was filed by the three children, by their father as their next friend, alleging that Chappell was not a resident of Maryland, that he had never given bond as trustee, that he had been disbarred by the United States Court for the District of Maryland, that while disbarment proceedings were pending against him before the Supreme Bench of Baltimore City he had requested that his name be stricken off the rolls of attorneys, for the reason that he was no longer a resident of Maryland, that he was insolvent and would waste the estate, if he continued in it. It then prayed that he be removed as trustee under this clause of the will of Philip S. Chappell, and that some suitable person be appointed. An order was passed that he be removed unless cause to the contrary be shown within one month after a copy of the petition and order be served upon him. On the 12th of February, 1901, an affidavit of a constable for the District of Columbia was filed stating that he had on the 8th of that month, served, in said District, a copy of the petition and order on said Chappell. On the 7th of March Chappell filed what he called "exceptions" to the jurisdiction of the Court and its order—there being thirty of them—and also a motion to quash the order of the Court, dated the 30th of January, 1901, and the service and return thereon, and a motion not to receive the petition of the three children. On the same day he entered an appeal from that order. That is the first appeal in this record and it must be dismissed for the very obvious reason that it was not a final order, or such as an appeal can be taken from.

An order was passed setting down the exceptions and motions for hearing on March 26th, provided the solicitor for the complainants gave Chappell notice by registered letter on or before a day named. That was done and "exceptions" were filed to that order. Another notice was sent to him that the exceptions, etc., would be heard by the Court on April 11, 1901. On that day the Court passed a decree removing him

as trustee and appointing William J. O'Brien, Jr., in his place. The latter gave the required bond and entered upon the discharge of his duties. Mr. Davison, on April 12th, filed a petition reciting that he had on the 11th of May, 1900, paid the $20,000 to the Clerk of the Court, and asked that the Clerk be authorized to pay it over to Mr. O'Brien and that he be directed to release the mortgage, which was done. Chappell again filed "exceptions," and on the same day (17th of May, 1901,) entered an appeal from the decree of the Court, which is the second one in this record.

We have thus stated the facts fully because, it seems to us, they answer the contention that the Court had no power to pass this decree. Unless Courts of equity have less power than we had supposed, the circumstances shown by this record present a case that pre-eminently called for such action as was taken. The orders were reversed in the previous appeal on purely technical grounds, and the cause remanded for further action. Before the record was transmitted to this Court, and apparently before the appeal was taken in that case, twenty thousand dollars of trust funds had been actually paid into Court. The trustee left the State, instructed the attorney who had represented him not to admit or accept service, and he had actual knowledge of the proceedings and abundant opportunity to be heard. The question therefore is, whether a trustee who has been a resident of this State can, by absenting himself from it, so place himself beyond the control of a Court of equity, in which proceedings have been commenced against him, as to take from it the power of protecting the trust estate, a part of which, if not all, is in this State. The will of Philip S. Chappell, which created the trust, was duly probated in Baltimore City, where the testator resided. When the original bill was filed Thomas C. Chappell was in that city. Under section 203 of Art. 15 of the Code, the Court had express power conferred upon it to require a bond to be given and in default thereof to remove the trustee and appoint another, at the instance of any person interested in the trust. There was therefore no question about the authority of the

Court to act under the original bill, independent of its general jurisdiction to administer trusts. It had assumed jurisdiction over the trust and the trustee was in Court when the $20,000 was authorized to be paid to the Clerk. The previous case was not reversed because of want of jurisdiction over the subject-matter, or over the person of the trustee, but only by reason of the irregularity in acting before exhibits had been filed. There can be no doubt that the Court not only had the power, but it was its duty to protect the $20,000, even if it be conceded that it had not acquired, or subsequently lost by the reversal of the case, control of the rest of the trust estate. After the former orders were reversed the trustee, Chappell, not only did not go into the Court below to protect the $20,000, but he left that State and from the District of Columbia sent his various papers, in effect defying the Court.

Is it to be said that with $20,000 of the trust money then in the hands of its Clerk, the Court had no jurisdiction to act or afford any protection or relief to those interested in the trust estate, because the original trustee had thus gone beyond the limits of the State? What was to be done with this sum of money? Was it to be sent out of the State to the trustee—especially if he was of the character pictured by this record? Were those interested in the trust to be required to follow him from place to place, in order to get personal service on him, before they could be protected? There can, it seems to us, be no doubt about the jurisdiction of the Court over the $20,000 which was sufficient to enable it to proceed against Chappell as a non-resident. Section 105 of Art. 16 of the Code expressly authorizes the Court, in any suit in chancery, by bill or petition, respecting in any manner the sale, partition, conveyance or transfer of any real or personal property lying or being in this State. * * * * *or concerning any use, trust or other interest therein,*" to proceed by publication against non-resident defendants, and section 114 of that Article, as amended by the Act of 1896, chapter 38, provides for the method of service adopted in this case, instead of publication in a newspaper. It was a proceeding *in rem*—a petition re-

specting the trust, $20,000 of which was actually in Court. We have said there can be no doubt as to that sum, and that was sufficient to give the Court power to require the trustee to properly administer the trust and, if he did not, to remove him and appoint some one who would. Indeed, it was necessary, unless the $20,000 be permitted to remain uninvested and unused, except so far as the Clerk could act.

But we do not mean to be understood that the Court only had jurisdiction over the $20,000, or that the new trustee could only take charge of that amount. The fact that it was shown that at least that much of the trust estate was within the city of Baltimore gave the Court jurisdiction to act concerning the trust, and when it removed the original trustee (which, under the facts before it, it was perfectly justified in doing), and appointed another, the new trustee was vested with power to administer all the trust estate within the jurisdiction of the Court. The original bill alleges that the plaintiffs did not know and had no way to ascertain how the trust funds were invested. They could not therefore allege what portion of it was actually in this State, and one of the objects of the bill was to require Chappell to render an account. They were thus endeavoring to ascertain where and how the estate was invested, and if the new trustee finds any of it in this State, in addition to the $20,000, it will be his duty to take possession of it.

In *Comegys* v. *State*, 10 G. & J. 183, it was said that trustees are generally removed and others substituted by original proceedings, filed for that purpose, but that cases may occur when they may be removed without such special proceedings and circumstances make it the duty of the Court to substitute a trustee. JUDGE ARCHER illustrated what was meant by saying, "As if it had been proved, after the trust fund had been converted into money, that the original trustee had removed from the jurisdiction of the State, or the United States, that he was entirely unworthy of trust and to make a stronger case, had become so, after the execution of the grantor's deed, creating the trust. Such a case would have imperiously de-

manded the substitution of a new trustee." In *Dorsey* v. *Thompson*, 37 Md. 25, that case was approved and orders for the removal of the trustee, under a will, and the appointment of another, at the instance of the *cestuis que trust* were sustained. The only process against the trustee in the latter case was an order of publication. So we are not without precedent in this State for such action by Courts of equity. In the case now before us the circumstances are such as to leave no doubt as to the duty of the Court below to take action promptly, for it was not only its right, but its duty to see that the trust estate was protected, and the conduct of the former trustee as shown by the record is sufficient to make it apparent that it was not proper to permit him to remain in charge any longer.

The third appeal of Chappell was from the order dated April 12, 1901, directing the Clerk to pay the $20,000 to the new trustee and authorizing the latter to release the mortgage. There is nothing in the record to show that the release was not proper and what we have said is sufficient to indicate our opinion as to the part of the order directing the money to be paid to Mr. O'Brien, the new trustee. That order will be affirmed.

The fourth appeal was from an order dated the 17th of April, 1901, directing Chappell to transfer to the new trustee the funds, etc., in his possession, or under his control. There can be no question about the propriety of that order so far as it affects property within the jurisdiction of the Court. There is nothing to show that there was any over which the Court had no control, and that order will be affirmed.

The first appeal taken by Mrs. Clarke was from the order of the 11th of April, 1901, removing Chappell and appointing a new trustee. We do not deem it necessary to discuss the question as to whether Mrs. Clarke was in a position to appeal, as we have no doubt as to the propriety of the order. It is proper to add, however, that whatever effect may be given to the order to dismiss the case, so far as she was concerned, the children had such an interest in the trust estate as to authorize the Court to act at their instance. They are en-

titled, by the terms of the will, to the estate at their mother's death, and it would be remarkable if they could not ask for its protection. The other two appeals by Mrs. Clarke are from the orders of the 12th and 17th of April, above referred to, and it is useless to say any more concerning them.

A number of other objections were made, but we will not refer to them, excepting to say that the fact that some of the orders appealed from were passed after the appeal in the former case were taken did not in any way invalidate them. No bond suspending the effect of those orders had been given, but in addition to that they were passed after the new petition was filed in which the removal of Chappell was asked for. The appeals taken in the former case in no wise interfered with steps being taken to protect the estate, as far as that was possible.

The first appeal in the record will be dismissed and each of the other six affirmed.

Appeal from order dated January 30th, 1901, dismissed and each of the other six affirmed, Thomas C. Chappell to pay all costs (including the printing of the record) in Nos. 19, 20, 21 and 22 (Office Docket), and Fannie Chappell Clarke to pay the costs in Nos. 23, 24 and 25 (Office Docket).