WINFIELD S. ASHBY, by Jessie B. Ashby, next friend,

*v.*

FREDERICK P. YETTER.

[Decided January 10th, 1911.]

1. Pending an appeal from an order or decree of the court of chancery, application may be made either to the court of errors and appeals or to the court of chancery for leave to execute the order or decree of the chancery court so far forth ᴧ, may be necessary for the protection and preservation of the subject of the appeal, and such an order, will be made when the exigencies of the situation call for it; but no order will be made that would destroy or impair the subject of the appeal.

2. If the procedure in the court of chancery sought to be had after the cause has been appealed is one calling for a new step or proceeding in that court in aid of the order or decree appealed from (for the protection and preservation of the subject of the appeal), application for leave to so proceed must be made to that court as it invokes original jurisdiction, and the court of errors and appeals, which is a court of appellate jurisdiction only, has no power to put such proceedings in motion in that court; nevertheless, application for leave to so proceed in the court of chancery may be made in the first instance to the court of errors and appeals, at the election of the moving party, but such leave is not required; the advantage of such leave from the court of errors and appeals would be to forestall an appeal from the order made in chancery, although such appeal would not of itself operate to stay the order of the chancery court; but, if an order to proceed in chancery should be obtained from that court without leave first had from the court above, application to the appellate court to stay the order of the court below would be open to the appellant.

On application for appointment of receiver in aid of decree pending appeal.

*Messrs. Garrison & Voorhees,* for the motion.

*Messrs. Wescott & Wescott,* contra.

WALKER, V. C.

At the time the decree for accounting in this cause was presented to me to be advised, a motion was made for the appointment of a receiver of the rents and profits of the premises described in the bill, and which I had decided to be the property of the complainant and to be held in trust for him by the defendant. The decree, embodying the findings contained in the memorandum opinion recently filed, was advised, and the motion for appointment of receiver was continued. It is because the decree had not been signed at the time the notice was given of the application for the appointment of a receiver that the court is asked to make the appointment on the results reached in the opinion instead of the matters adjudicated in the decree. The complainant might better have waited until the decree was signed, which has since been done, or, anticipating the signing of the decree, have pleaded a situation created by the decree rather than by the opinion. However, no criticism is made upon this informality, and the application will be considered on its merits.

The petition for the appointment of the receiver, in substance, avers that the complainant is entitled to an accounting by the defendant for the transactions between the parties from the date of the conveyance of his properties by the complainant to the defendant on March 18th, 1902; that the premises consist of various buildings occupied by tenants who pay rent to the defendant; that there are mortgages on some of the property; that no taxes have been paid on the property for the past two years (this has been conceded to be a mistake); that there is due to the complainant from the defendant a large sum of money, and that he is a man of no means and is financially irresponsible, and that if he be permitted to collect further rents the complainant will be irreparably injured. It is conceded, I believe, that the defendant has practically no other property except that which came to him by and through the complainant, save the properties which he conveyed to the complainant and which have been held to be merely security for the faithful performance of his duties as trustee for the complainant, his property being inconsiderable in value compared to the complainant's—that is, less than one

thousand dollars as against over twelve thousand dollars. These facts are not controverted on this motion.

The defendant resists the application for the appointment of a receiver for the reason, principally, that he has appealed from the decree of this court, and he claims that the decision of the court of errors and appeals in *Pennsylvania Railroad Co.* v. *National Docks Railway Co.* (*Court of Errors and Appeals, 1896*), *54 N. J. Eq.* (*9 Dick.*) *647*, operates to prevent this court from making any order in the cause until it shall have been remitted from the court above.

The question of the power of this court to make the order prayed for necessitates a determination of its power to act in a cause removed from it by appeal into the court of errors and appeals, and my justification for the somewhat extended examination of this subject which I have made, and the exploitation of views which I will now make, is a desire to group the decisions and make some observations that may be of service to the bar on this question so often arising, generally perplexing and always important.

An examination of the question presented leads me to the conclusion that the decision in the *National Docks Case* has not the broad and unqualified effect ascribed to it by the defendant's counsel.

It is true that it was held in the *National Docks Case* (at *p. 653*) that "The entire purpose and object of the appeal is to preserve such rights and property from the ill effects of the decision that is challenged. Unless it produces such a result, the procedure is a mere form, and, in many cases, absolutely a useless form. The suitor in carrying his case up asks for protection against an erroneous decree; such protection is obviously refused to him if the decree can be enforced before its legality has been tested by the superior court. In fine, the very essence of the remedy by appeal is to prevent, for the time being, the appellant from this execution of the existing decree; and this being so, it is indisputable that when the statute grants the right of appeal, it grants such protection. A decree cannot be used detrimentally to the appellant, pending the appeal, for the plain

reason that such a use will, for every practical purpose, defeat the appellate procedure."

Furthermore, the learned chief-justice, in concluding the opinion in the *National Docks Case* (at *p. 655*), uses this still broader and stronger language:

"It is likewise the opinion of this court that an appeal in all cases will have that effect given to it which shall be necessary to preserve the subject to which the appellate procedure relates, in such a condition as will enable this court to render an efficacious decree in the premises. That for this purpose an injunction decree will be suspended or continued, or a previous injunction revived, by the act of filing an appeal whenever such construction shall be necessary for the end just stated."

It will be seen that this last observation applies particularly to injunctions, and it has, I think, been regarded, as to all other matters, *obiter dictum*. As to injunctions, the legislature has since intervened, and by statute established the practice. *Chancery act, P. L. 1902 p. 546 §§ 112, 113.* See, also, *Johnson v. Seabury & Johnson, 69 N. J. Eq. (3 Robb.) 696*.

A perusal of the cases decided both in the court of errors and appeals and in this court since the *National Docks Case* will, I think, tend to show that its apparently unlimited scope has been curtailed and modified.

Following the *National Docks Case* came that of *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge (Court of Chancery, 1896), 55 N. J. Eq. (10 Dick.) 159.* It was an application for a stay of proceedings pending appeal from an injunction decree and for a continuance of the *ad interim* stay which was granted *ex parte* on filing the bill and which was discharged by the injunction decree made on the hearing. The decree was more limited than the *ad interim* stay, and the difference complainant claimed was vital to the relief sought by the bill and on appeal. The opinion was by Vice-Chancellor Emery, and he denied the application on grounds other than those enunciated in the *National Docks Case*, and said (at *p. 162*):

"Counsel for the complainant urge, however, that the recent decision of the court of errors and appeals in *Pennsylvania Railroad Co.* v. *National Docks, &c., Co. (September, 1896), 54 N.*

*J. Eq.* (*9 Dick.*) *647*, has established a different rule and entitles the complainant to an order of this court continuing the *ad interim* or preliminary stay pending appeal. In this case it was held that by the mere act of filing the notice of appeal, the final decree rendered in the cause lost all its force pending an appeal, and that an appellant could not fall into contempt by resisting the execution of the decree pending appeal. The final decree here appealed from was an injunction decree, restraining the defendant from opposing the complainant in making a causeway or tunnel under the defendant's caryard, and requiring the defendant to assist this construction by removing certain of its trains in the caryard. The court was of opinion that if this decree were carried out pending appeal, it would deprive the appellate court of the ability to render anything more than a merely nominal decree on appeal in favor of the appellant. In support of the present application, counsel for the complainant relies upon the express declaration in the opinion filed in the cause as to the effect of an appeal from an injunction decree. The language is as follows: 'It is likewise the opinion of this court that an appeal in all cases will have that effect given to it which shall be necessary to preserve the subject to which the appellate procedure relates in such a condition as will enable this court to render an efficacious decree in the premises, and that for this purpose an injunction decree will be suspended or continued, or a previous injunction revived, by the act of filing an appeal, whenever such construction shall be necessary for the end just stated.' "

And at *p. 163*:

"Without deciding upon the construction of the rule laid down in the opinion, it seems to me that even if the complainant's construction be the correct one, a stay by this court to carry out this construction should not now be granted for several reasons—*first*, the precise point now involved is the effect of the appeal upon an injunction previously granted and which has been discharged or modified by the decree appealed from, and so far as relates to this point, I am not clear that the opinion is not *obiter*, if tested by the usual rules applicable to decisions, because this point does not seem to have been necessarily involved

in the decision of the case. The decision, as I understand it, establishes the rule that an appeal from an injunction decree *ipso facto* stays proceedings upon the decree appealed from to a certain extent and for a certain purpose, and it applied this rule to the case in hand, which was that of a decree granting an injunction, and settled the effect of an appeal from such decree. But the question as to the effect of this rule, when applied to decrees discharging or modifying injunctions, seems to be a different one and to present special and different considerations, which should be made the subject of direct adjudication when the point is distinctly involved."

The next case is that of *Morton* v. *Beach* (*Court of Errors and Appeals, 1898*), *56 N. J. Eq.* (*11 Dick.*) *791.* One ground of appeal was that the court of chancery was without power to make the decree, because the accounting upon which it was based was had pending an appeal from the interlocutory decree that directed the taking of the account. Said Mr. Justice Garrison, speaking for the court (at *p. 792*) :

"The contention of the appellant is that her appeal from the interlocutory decree suspended the order for an accounting. It is said that the case of *Pennsylvania Railroad Co.* v. *National Docks Railway Co.,* *54 N. J. Eq.* (*9 Dick.*) *647,* is a precedent for this position. That case indubitably decided that the mere act of the appellant, in placing before this court the question whether the threatened destruction of its property was justifiable, preserved the property from destruction while the question was under consideration by this court. The opinion further intimated in no uncertain terms that this must be the effect of every appeal if the preservation of the subject of litigation be necessary to the remedy sought in this court. Neither this case nor the principle that it illustrates have any application to an appeal from a decree directing the taking of an account where there is no property to be preserved and no destruction to be averted. Apart from the supposed authority of this decision, there is nothing in equity practice to countenance the contention."

In *State Mutual Building and Loan Association* v. *O'Callaghan* (*Court of Chancery, 1904*), *67 N. J. Eq.* (*1 Robb.*) *103,*

after the entry of a decree of reversal of an interlocutory order, the defendant, O'Callaghan, moved to set aside the sheriff's sale under the execution issued in the cause and for such relief as might be proper or incidental to the reversal of the chancery order which discharged an order to show cause with stay theretofore made. The motion was resisted for two reasons, one, upon the strength of the *National Docks Case.* Said Vice-Chancellor Pitney (at *p. 113*) :

"The remaining point upon which the petitioner rested his motion was that the appeal taken from the order discharging the order of May 22d, 1902, had the effect, under the decision in the *National Docks Case,* of rendering invalid further proceedings under the decree.

"Here, again, I feel justified in saying that the supposition prevails with the bar that the members of the court, as then constituted, cannot be held to have approved all that was said by the late chief-justice in that case. I also feel justified in saying that the general sentiment of the bar of the state is that the doctrine there laid down must be limited in its application to cases strictly analogous to the case then before the court. Such seems to have been the view of Vice-Chancellor Emery in *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq. (10 Dick.) 159* (at *pp. 162, 163*). In the same direction is the language of Mr. Justice Garrison, speaking for the court of errors and appeals, in the case of *Morton.* v. *Beach, 56 N. J. Eq. (11 Dick.) 791* (at *p. 792*)."

And, again (at *p. 115*) :

"In short, the sentiment of the bar seems to be that the doctrine of the learned chief-justice, carried to its logical conclusions, results in this; that the complainant who has been refused an injunction by this court may obtain that injunction by simply appealing from the order of the chancellor refusing it, and may obtain and enjoy the benefit of the extraordinary power of restraint of this court without the judicial approval of any court or judge. This, it is claimed, amounts to a *reductio ad absurdum.* * * *

"I shall add that, immediately after the promulgation of the opinion in question, the court of chancery, in order to guard

against the injurious results which would arise almost certainly from the practical application of the doctrine that a restraint contained in a simple order might be continued by a mere appeal from the order discharging that restraint, adopted the practice of limiting the *interim* restraint to a particular day and hour, so that it came to an end without any order to that effect."

*Strong* v. *Smith* (*Court of Chancery, 1905*), *68 N. J. Eq.* (*2 Robb.*) *686*, was a case in which a tenant in possession of mortgaged premises from a time prior to the commencement of the foreclosure suit resisted an application for a writ of assistance upon the ground that he was not made a defendant, and appealed from an order for possession made against him. Said Vice-Chancellor Stevenson (at *p. 702*) :

"I think that Mr. Lamar's possession should not be disturbed at present, provided he promptly takes and diligently prosecutes an appeal. This stay is made without attempting to discuss the force of the peculiar views in regard to the essential nature and effect of an appeal from this court, expressed in the opinion of the late Chief-Justice Beasley in the case of *Pennsylvania Railroad Co.* v. *National Docks, &c., Railway Co.* (*1896*), *54 N. J. Eq.* (*9 Dick.*) *647*.

"I understand that that opinion in fact expressed merely the views of the learned judge who wrote it. See *State Mutual Building and Loan Association* v. *O'Callaghan, 67 N. J. Eq.* (*1 Robb.*) *103; Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq.* (*10 Dick.*) *159; Morton* v. *Beach, 56 N. J. Eq.* (*11 Dick.*) *791*. The force of the *National Docks Railway Case* as a precedent in the future will, I think, be confined to cases presenting parallel facts. There seems to be still room to argue in New Jersey that appellate proceedings for the review of a judgment, decree or order at law or in equity oftentimes are in effect proceedings for restitution, for compensation on account of erroneous action of the inferior court, for restitution of a status which has been in fact changed, rather than for the prevention of such change of status. I think that a stay, by order of this court, is necessary to arrest the dispossession proceedings under the writ of assistance until the court of errors and

appeals can take action upon the case, and therefore such stay will be granted."

Then follows the opinion of the court of errors and appeals (*2 Robb. 703*), in which the decision of Vice-Chancellor Stevenson is affirmed upon the ground that when a person in possession of mortgaged premises upon which there has been foreclosure is made a party to the possessory proceeding instituted on the basis of the decree, and it is clearly shown that he claims under one who is a party to the suit, and that his right of possession is undoubtedly subordinate to the right for the enforcement of which the writ of assistance is prayed, it may be issued against him, even though he be not technically bound by the decree. And this without any reference to the observations of Vice-Chancellor Stevenson in regard to the *National Docks Case.* His criticism of that case is passed *sub silentio,* and, I take it, is not overruled, or else it would have been disapproved, as were certain expressions of this court in *Dickinson* v. *Updike, 49 Atl. Rep. 712* (at *p. 714*), on an affirmance for the reasons given in Vice-Chancellor Reed's opinion. See, also, *Van Horn* v. *Demarest, 77 N. J. Eq.* (*7 Buch.*) *264.*

In *Laird* v. *Atlantic Coast Sanitary Co.* (*Court of Chancery, 1907*), *73 N. J. Eq.* (*3 Buch.*) *5,* an injunction case, Chancellor Magie said (at *p. 7*) :

"Counsel for defendant insists that the power of the chancellor to direct the issue of process of injunction upon a decree for that purpose, after the filing of an appeal, has been declared to be improper by the court of errors and appeals in *Pennsylvania Railroad Co.* v. *National Docks Railway Co., 54 N. J. Eq.* (*9 Dick.*) *647.* Such a view of the decision in that case frequently has been indicated by the bar. It has been conceived that the decision indicated that the filing of an appeal deprived this court of the power of proceeding with the case before it, and even where the appeal has been taken from some interlocutory order or decree."

And at *p. 9 :*

"But it was never intended to extend the action in that case beyond the class of cases then presented, viz., where the decree of this court, or the process issued thereon, would, if not affected by the appeal, absolutely destroy the subject-matter of the litigation

and leave nothing except an abstraction to be passed upon by the reviewing court. This, I am sure, was the view of the judges who took part in the decision, and if there are expressions in the opinion of the learned chief-justice which can be properly deemed of broader import, I think they would not have met the views of the majority taking part in the decision. At all events, they were not called for by the case presented or the determination arrived at.

"Since that time, I apprehend that this court is limited in its issuing of process upon a decree appealed from to this extent. It ought not to direct the issuing of such process if it appears to it that the effect would be to substantially destroy the subject-matter of the litigation and prevent the effectiveness of an appeal, and if it should issue the writ, where such clearly appears to be the effect, it would be reversible error, and an attempt to enforce the process so issued and having such effect, by proceedings for contempt, would also be reversible error."

In *Van Houten* v. *Hall, 66 Atl. Rep. 1085,* Vice-Chancellor Bergen refused to order the partial performance of a decree because he said he could find no precedent permitting a partial execution of a decree in a cause removed to the jurisdiction of the appellate court by the act of the party asking its partial performance in this court; for, if the right to enforce the decree were not affected by the appeal, it would apply to the whole decree as well as to part of it, and to execute the entire decree would destroy the subject of the appeal, citing the *National Docks Case,* and saying that the application should be made to the court of errors and appeals, which then had jurisdiction of the subject-matter, for any order that the court of chancery might make would itself be subject to appeal, thus creating a confusion that ought to be avoided. Now, manifestly, here is no criticism, either expressed or implied, of the cases explaining and limiting the effect of the *National Docks Case.* It was in the *Van Houten Case* distinctly held by the vice-chancellor, that a full performance of the particular decree would destroy the subject of the appeal, and that a partial performance pending the appeal was without precedent and would or might result in confusion.

Now it is to be observed that the decree in that case (*Van*

*Houten* v. *Hall*) was one for the distribution of a legacy under a will, and, pending appeal, some of the distributees asked the court to permit the enforcement of the decree in their favor to a substantial extent, consenting that their adversary might participate in the distribution, but only to the extent that she would be entitled should the appellant succeed in the court above. That was the state of facts upon which the decision of Vice-Chancellor Bergen rested, and it is here mentioned to show that the vice-chancellor's decision that a partial performance of the decree would not be granted pending appeal, did not extend to a case, and, consequently, did not cover a class of cases in which an adjudication of this court decreed the performance or execution of several affirmative acts. To illustrate: Take the case at bar, the decree adjudges that there shall be a reconveyance of property, real and personal, from the defendant to the complainant, and that the defendant shall account to the complainant for his occupation and use of the property. Now, as we have seen, an appeal from a decree directing an accounting will not stay the accounting pending the appeal (*Morton* v. *Beach, ubi supra*), and therefore the accounting may be proceeded with pending this appeal; but, of course, the reconveyance of the property, real and personal, ordered, may not be made, because if it were, the avails of the litigation would be at once placed in the possession of the complainant, and could be disposed of or consumed by him, and thus would that particular subject of the litigation be destroyed, pending the appeal, and leave nothing except an abstract question to be passed upon by the court of last resort. The question before the court in the case at bar is not an application to put the complainant in possession of any of the avails of the litigation, pending the appeal, but is one looking to the protection and preservation of part of the property which has been adjudged to the complainant, so that the defendant shall not have an opportunity to consume it during the litigation in the court above. It is an application not to destroy but to preserve.

Besides mentioning the *National Docks Case,* I have now noticed every reported case in this state in which that case has been adverted to and commented upon with reference to the subject under discussion. I will now notice two cases in which the court

.of errors and appeals, on application, has ordered a partial performance of the decree of the court of chancery, pending appeal, and in which cases no opinions were filed. This partial performance which was ordered, extended to particular features of the decrees and particular subjects, among others, of the litigations.

In the case of *Lawton* v. *Beddell,* in which there was a decree for the complainant in chancery and an appeal taken, motion was made before the court of errors and appeals for permission to enforce the decree in the court below, pending the appeal, up to but not including the turning over to the complainant the avails of the litigation. After hearing argument upon the motion, the court went into conference, and on arising announced that the motion would be granted, whereupon the following order was entered (December 5th, 1908) :

"Ordered, that notwithstanding the appeal so taken, and notwithstanding anything in the rules of the court of chancery, or in the rules of this court contained, the complainant and respondent shall be and is at liberty to take such steps in the court of chancery as he may be advised to procure the execution and enforcement of the said decree (except as to the collection of costs), and to apply to the court of chancery for the punishment of the defendants for contempt of that court for their failure or refusal to perform the said decree, and for an order requiring the defendants to restore to the State of New Jersey any and all assets and property of the defendant company that have been removed from the State of New Jersey, and for the custody and control of such assets when so restored, to the end that said company may be held answerable for such dividends as may be declared, pursuant to the said decree; and that the complainant and respondent shall further be at liberty to apply to the court of chancery, after the declaration of the dividend provided for by said decree, for further relief in the premises according to the leave for that purpose reserved to the respondent in said decree; and that in the above respects, and any other respects necessary for the proper preservation of the subject-matter of the controversy pending the said appeal, the court of chancery shall be at liberty to proceed in the matter pending the said appeal, the same as if the said appeal had not been taken.

"Provided, that if any dividend or dividends shall be declared by the defendant company pursuant to the said decree, or pursuant to any further order or decree of the court of chancery in the premises, and the complainant shall bring action at law or in equity, for the recovery of the amount declared to be due to him, he shall not proceed to the actual collection of such dividend under process of execution, or otherwise, without the further order of this court.

"And it is further ordered that the respondent shall be at liberty to move this court hereafter to dismiss the said appeal, or for such other relief as he may be advised, if the defendants, or any of them, shall, in the absence of an order of the court of chancery, or in disobedience of such order, do anything to jeopardize the interest of the respondent in the subject-matter of the litigation."

In the later case of *Forman* v. *Hinkle,* in which the court of chancery had decreed that the defendant should pay a certain sum of money into court pending an accounting, the defendant appealed, and the complainant moved in the court of errors and appeals for leave to enforce the payment into court *pendente lite* of the fund so decreed to be deposited by the court of chancery After hearing argument, the motion was granted, and the following order was entered (March 22d, 1909):

"Ordered, that notwithstanding the appeal so taken, and notwithstanding anything in the rules of the court of chancery, or in the rules of this court contained, the complainant and respondent shall be and is at liberty to proceed in the court of chancery to require the appellant to make payment into court of the moneys in said order mentioned without deduction in accordance with the terms of the order so appealed from, and to apply to and proceed in the court of chancery for the punishment of the defendant for contempt of that court for his failure or refusal to perform the command, directions and requirements of said order, and the court of chancery shall be at liberty to proceed to the extent aforesaid pending the said appeal, the same as if the said appeal had not been taken."

· If the court of chancery rightly ordered the payment into court of the moneys clearly shown to be due, pending an accounting,

why may it not appoint a receiver of rents and profits in this case pending an accounting and pending an appeal from the decree for the accounting? I know of no reason why it may not, and believe the exigencies of the situation call for such action.

The significance of the reference to the rules of the court of errors and appeals and of this court in the orders above recited, appears to be this: Rule 21 of the appellate court provides that in default of serving a copy of the petition of appeal and making deposit to answer the costs of appeal, proceedings may be had on the order or decree appealed from, as if appeal had not been made, the rule being a tacit intimation or recognition of the stay of proceedings pending a perfected appeal; and rule 149 of the court of chancery provides that an appeal from an interlocutory order shall not stay proceedings without an order of that court or of the court of errors and appeals for that purpose; and rule 150, that if the party appealing from a final decree shall within ten days after filing the decree file his (notice of) appeal in this court, process shall not issue on the decree without the order of this court or the court of errors and appeals. Now, it must be obvious that under these rules the decree of the court of chancery, interlocutory or final, cannot be proceeded upon, if promptly taken and perfected without the order of the court of errors and appeals, or of this court, in cases in which this court may, notwithstanding the appeal, permit of further proceedings under its order or decree.

The fact that the court of errors and appeals was appealed to for leave to proceed in this court in the cases of *Lawton* v. *Beddell* and *Gorman* v. *Hinkle,* shows an election by counsel for the respondents in those cases to resort to and invoke the powers of the appellate court, rather than those of this court, for authority to proceed in chancery pending the appeal, not only because the court above had the power to grant the orders applied for, but because there could be no question about any appeal from those orders when made in that court, and, consequently, no confusion with reference to the proceedings in the court below under the leave granted, for, had the leave been applied for and granted in this court, without the sanction of the court above, and the appellants had at their peril resisted the execution of the decrees ap-

pealed from to the extent of the leave given for proceeding, resort would doubtless have had to be had in this court to proceedings, for contempt, which the appellants could have reviewed ultimately in the court of errors and appeals and thus would have secured considerable delay, which might have been that for which they were really contending.

The jurisdiction of the court of errors and appeals is altogether appellate, and not at all original.

In *New Jersey Franklinite Co.* v. *Ames, 12 N. J. Eq. (1 Beas.) 507*, application was made to that court to then and there admit parties to the controversy to defend their rights. Said Chief-Justice Green (at *p. 510*) :

"If the court think that the applicants should be made parties, how is the bill to be amended, the parties to be brought before us, the pleadings to be filed, and the rights of parties to be settled in this court? How many questions are we to settle that the chancellor has never heard of in the cause? What will the proceeding be but a bold and lawless usurpation of original jurisdiction?"

In *Black* v. *Delaware and Raritan Canal Co., 24 N. J. Eq. (9 C. E. Gr.) 455*, Mr. Justice Van Syckel, speaking for the court of errors and appeals, said (at *p. 477*) :

"In this court of purely appellate jurisdiction, the struggle must be decided upon the case that was made before the chancellor; no new facts can be introduced here by testimony. This question was most ably discussed on the motion to dismiss this appeal, and it was so held by a very decided majority of a full court. That decision is authoritative until reversed."

The application now made, namely, to appoint a receiver, is an appeal to the original jurisdiction of the court of chancery, and it could not be made to the court of errors and appeals, although application could be made to that court for leave to make the application in this court, but, equally can such application be made to this court, notwithstanding the appeal, for it is perfectly clear that the appointment of a receiver would not destroy the subject of the appeal, but, on the contrary, would protect and conserve it.

From the above decisions and orders I deduce the following rules of law and practice concerning proceedings in the court of

chancery pending an appeal to the court of errors and appeals—
*first,* pending an appeal from an order or decree of the court of
chancery, application may be made either to the court of errors
and appeals or to the court of chancery for leave to execute the
order or decree of the chancery court so far forth as may be nec-
essary for the protection and preservation of the subject of the
appeal, and such an order will be made when the exigencies of the
situation call for it; but no order will be made that would destroy
or impair the subject of the appeal; *second,* if the procedure in
the court of chancery sought to be had after the cause has been
appealed is one calling for a new step or proceeding in that court
in aid of the order or decree appealed from (for the protection
and preservation of the subject of the appeal), application for
leave to so proceed must be made to that court as it invokes origi-
nal jurisdiction, and the court of errors and appeals, which is a
court of appellate jurisdiction only, has no power to put such
proceedings in motion in that court; nevertheless, application for
leave to so proceed in the court of chancery may be made in the
first instance to the court of errors and appeals, at the election of
the moving party, but such leave is not required; the advantage
of such leave from the court of errors and appeals would be to
forestall an appeal from the order made in chancery, although
such appeal would not of itself operate to stay the order of the
chancery court; but, if an order to proceed in chancery should be
obtained from that court without leave first had from the court
above, application to the appellate court to stay the order of the
court below would be open to the appellant. It must be obvious
that an order to proceed in the court below, made on leave from
the court above, could no more be appealed than could a final de-
cree made on a *remittitur* from the court of last resort. That
court's decision on any matter being of course an absolute finality.

Disposition will now be made of the application before the
court. It has the power to make the order asked for. The facts
so far as this present issue is concerned are not disputed, and the
respondent is, under the circumstances, entitled to have the sub-
ject of the appeal secured *pendente lite.* An order will be advised
that a receiver be appointed, unless the defendant shall, within
ten days after service upon him of a copy of such order, enter

into bond to the complainant in the sum of $2,000, conditioned that he will well and truly account for the rents, issues and profits of the property mentioned in the pleadings and decree, which have come to his hands since the date of the decree in that cause,. or that shall be received by him after such date, and shall pay the same to the complainant under the order of this court, if the decree of this court shall be affirmed, but not otherwise; such bond to be approved by a special master, to be named in the order, and to be filed with the clerk of this court within the time mentioned. In default of the giving of such bond, the respondent shall be at liberty to apply to this court for the appointment of a receiver ex parte and without notice.