WESTINGHOUSE ELECTRIC MANUFACTURING CO. *v.* BARRE & MONTPELIER TRACTION & POWER CO. ET AL.

Special Term at Montpelier, December, 1923.

Present:    WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 4, 1924.

*Courts—Jurisdiction of Supreme Court and Court of Chancery in Receivership Proceedings—Jurisdiction of Court of Chancery During Pendency of Appeal—Construction of Statutes.*

1. Under G. L. 1487, original jurisdiction in receivership proceedings is conferred upon the court of chancery, the powers of which are vested in a single chancellor.
2. The Supreme Court has only appellate jurisdiction in receivership proceedings.
3. G. L. 1491, conferring upon each justice of the Supreme Court the power and authority of a chancellor to issue or dissolve injunctions, to appoint receivers, and to make interlocutory orders, does not enlarge or modify the chancery jurisdiction of the Supreme Court.
4. Such jurisdiction is statutory, being acquired only in the manner provided by statute, and is exhausted when the appeal has been considered, judgment entered, and the cause remanded.
5. The Supreme Court on appeals in chancery sits in error only.
6. There being nothing in the Constitution or laws of the State to the contrary, an appeal does not deprive the court of chancery of

all authority in the premises and invest the Supreme Court with exclusive jurisdiction pending the appeal, but leaves the court below jurisdiction in interlocutory matters not inconsistent with the power to reverse, vacate, or modify the final order or decree.

7. During the pendency of an appeal to the Supreme Court in a chancery proceeding in which a receiver of a street railway had been appointed by the chancellor, the court of chancery had jurisdiction of a petition relating to rates and to the discontinuance of the line or a part thereof, including the making of proper orders during such time looking to the care and preservation of the property in question and the protection of the rights and interest of the parties.

8. A statute is not to be given a construction at variance with established rules of procedure, unless the intention so to do is apparent.

PETITION to the Supreme Court during the pendency of an appeal in receivership proceedings from a decree determining priority of claims, the petitioner, the American Trust Company, being trustee under a mortgage from the traction company to secure its bondholders, such petition praying that the operation of certain branches of the traction company be discontinued and the rates raised, or, failing in such relief, operation of the entire railway be discontinued. *Petition dismissed.*

*Erwin M. Harvey* for the petitioner.

*George L. Hunt* for the City of Montpelier.

TAYLOR, J.  The matter now before the Court arises on the petition of the American Trust Company, one of the defendants, the trustee under a mortgage from the Traction Company to secure the bondholders of the company.  The original action was a receivership proceeding instituted in November, 1920, by the plaintiff, an unsecured creditor of the Traction Company.  On hearing the court of chancery granted the prayer of the bill and appointed a receiver, who qualified and took over the management of the affairs of the company which included the operation of the electric railway serving the cities of Barre and Montpelier

and the intervening territory. The receiver has hitherto continued to operate such railway under the orders of the court of chancery. Various parties in interest as creditors of the Traction Company have from time to time been cited in or permitted to intervene. The American Trust Company was granted leave to file a bill of complaint in the cause praying for the foreclosure of its mortgage on the property in the hands of the receiver. Upon hearing, involving principally the question of priority of claims, a decree was passed determining the order in which specified claims should be paid and granting a foreclosure of the bondholders' mortgage upon condition that the Trust Company pay the claims which were given priority over the bondholders. It was further ordered that, on failure of the Traction Company or the general creditors to redeem and of the Trust Company to pay the claims having priority within specified times, the receiver should sell the mortgaged property on or before a date named and distribute the proceeds thereof in accordance with the priorities set forth in the decree. From this decree the Trust Company appealed, and the case was heard and submitted on the appeal at the November Term and is still with the Court for decision. Subsequently the petition under consideration was filed in the case.

In substance it sets forth the financial condition of the Traction Company, the need of additional equipment, the existence of certain unprofitable branches of the railway, and the inability of the road to meet operating expenses and yield a reasonable return on the investment as at present operated. It prays for an order that the operation of the unprofitable branches be suspended and that the rate of fare be raised; with the alternative that, unless the foregoing prayers are granted, the entire road be ordered discontinued. Pending consideration of the questions raised on the appeal, the petition has been brought on for hearing and counsel have been heard on the question of the Court's jurisdiction to entertain the same.

Counsel for the petitioner rely upon the provisions of G. L. 1562 to 1564 in support of the claim that, since the appeal removed the cause in which the receiver was appointed to this Court, the court of chancery has no further jurisdiction during the pendency of the appeal; but that the jurisdiction of the subject-matter of the petition was by the appeal transferred to this

Court.   The question whether the appeal in such a proceeding
terminates the jurisdiction of the chancellor to make orders re-
specting the care and management of property in the receiver's
hands has, so far as we are aware, never before arisen in this
Court.   Under the practice in this State, the question of continu-
ing jurisdiction would not be liable to arise in ordinary chancery
cases.   But where the subject-matter of the litigation is property
in the hands of a receiver, who acts as an officer of the court and
under its orders, the occasion for exercising this supervisory
power may often arise pending an appeal.   Hence, the impor-
tance of the question as a matter of chancery practice is at once
apparent.

[1-4]   The original jurisdiction in receivership proceedings,
as in all chancery matters, is conferred upon the court of chan-
cery, the powers of which are vested in a single chancellor.
G. L. 1487.   The Supreme Court has only appellate jurisdiction
in such matters.   *Slason* v. *Cannon,* 19 Vt. 219; *Canerdy* v.
*Baker,* 55 Vt. 578.   The statute (G. L. 1491), conferring upon
each justice the power and authority of a chancellor to issue or
dissolve injunctions, to appoint receivers, and to make inter-
locutory orders, does not enlarge or modify the chancery juris-
diction of the Supreme Court.   Its jurisdiction is statutory, ac-
quired only in the manner provided by statute (*Gove* v. *Gove's
Admr.,* 87 Vt. 468, 89 Atl. 868; *Ludlow Savings Bk.* v. *Knight,*
91 Vt. 172, 99 Atl. 633; *Essex Storage Electric Co., Inc.* v. *Victory
Lumber Co.,* 93 Vt. 437, 443, 108 Atl. 426), and exhausted when
the appeal has been considered, judgment entered, and the cause
remanded.   (*Town of Underhill* v. *Town of Jericho,* 66 Vt. 183,
28 Atl. 879; *Monahan* v. *Monahan,* 77 Vt. 155, 59 Atl. 176);
subject, however, to be restored on proper petition or motion for
rehearing.   G. L. 1567-1570.   On a casual reading, the sections
of the statute relied upon seem to lend support to the petitioner's
claim; but the inconvenience and cumbersomeness of the pro-
cedure contended for prompts an investigation of the develop-
ment of our chancery practice to discover whether they should
be given any such construction.

At its October session, 1779, the Legislature constituted the
superior court a court of equity with jurisdiction limited to
matters in dispute that did not exceed four thousand pounds
and enacted that all cases in equity where the matter in dispute

exceeded that sum should be heard and determined by the Governor and Council and House of Representatives. The act provided for a review in actions wherein the title of land was concerned and for an appeal in such actions to the Governor, Council, and Assembly. At the June session, 1782, a judiciary act was passed regulating justices of the peace and county courts and constituting a "supreme court of judicature" in place of the superior court. The first council of censors in their report made in 1786 criticize so much of the act of 1779 as invested the Governor, Council, and Assembly with equity powers as not only inexpedient but in violation of the Constitution. Their recommendation was heeded, and at the October session, 1786, so much of the act of 1779 as invested equity powers in the Governor, Council, and Assembly was repealed. Further it was expressly provided in the Constitution as amended in 1786 that the legislative, executive, and judicial departments should be distinct, "so that neither exercise the power belonging to the other," and the Legislature was authorized to erect a court of chancery "provided they do not constitute themselves the judges of said court." At the October session, 1788, an act was passed constituting a court of chancery to be held in the several counties at the times and places appointed by law for holding the Supreme Court therein. The judges of the law court were made chancellors, two of whom should constitute a quorum of the court of chancery. The act further provided that "the manner of process" (the proceedings) in said court should conform as near as may be to the rules and precedents established in courts of chancery in the Kingdom of Great Britain. These provisions were re-enacted in the revision of the statutes in 1797 in substantially the same language, except that to the provision respecting procedure was added, "so far as shall be consistent with the constitution and laws of this state." In 1821, by an act "making further provisions in the judiciary department," a single chancellor was given authority to make interlocutory orders and decrees in vacation preparatory to the final hearing in the court of chancery. No. 35, Acts of 1821, § 4. In the reorganization of the courts in 1824 it was provided that the Supreme Court and court of chancery should consist of one chief justice and three assistant justices any three of whom should constitute a quorum, and that said court should have original

and conclusive jurisdiction of all suits in chancery. A single judge presiding in county court or during vacation was empowered as chancellor to make interlocutory orders or decrees, "preparatory to the proceeding and final hearing of any suit in chancery." The court, as before, held one session annually in each county. No. 46, Acts of 1824. The court of chancery as thus constituted remained unchanged until the revision of the statutes in 1839. It will be seen that from 1788 the Supreme Court had the original and conclusive jurisdiction in chancery matters, there being no provision for appeals in such proceedings.

The court of chancery as at present constituted came into existence in 1839. Each judge of the Supreme Court was made a chancellor and given within his judicial circuit all the jurisdiction and powers then or thereafter vested in a court of chancery. The powers and jurisdiction of the court were declared to be "co-extensive with the powers and jurisdiction of the court of chancery in England with the exceptions, additions and limitations created and imposed by the constitution and laws of this state." An appeal to this Court from a final order or decree of the court of chancery was authorized in the manner still in force. Respecting the appellate jurisdiction it was provided that upon the order or decree of the court of chancery being brought by appeal to the Supreme Court, "the court shall examine all errors that shall be assigned or found in such order or decree and shall hear and determine such appeal, and shall affirm, reverse or alter such order or decree as justice shall require." A significant provision, in view of later amendments presently to be noticed, is found in the section defining the duty of the clerk. It was made his duty "to transfer such cause" with the papers, etc., to the Supreme Court "at the next term thereof in such county after such appeal." As the Supreme Court sat in each county only once each year, it might occur that practically a full year would intervene between the time the appeal was taken and the time it could be entered in the appellate court. Plainly enough this was the evil sought to be corrected by the act of 1865 which is the basis of the provisions relied upon by the petitioner.

Early in the session of 1865 Mr. Prout of Rutland, later a judge of this Court, introduced a bill which provided in substance that the appeal from the final order or decree in chancery

should not affect the jurisdiction and power of the chancellor to make such interlocutory orders as the circumstances of the case might require, but that the cause for such purposes should be deemed pending in the court of chancery. The bill was amended in the House by adding a section making it the duty of the clerk of the court of chancery to transfer such orders to the Supreme Court, and providing that they should become a part of the cause on the hearing therein. It will be seen that the bill proposed to give the chancellor complete jurisdiction in interlocutory matters not only in the interim between the time of taking the appeal and the term of court to which it was taken, but thereafter while the cause was pending in the Supreme Court. This plan presented manifest difficulties which were obviated by amendments originating in the Senate. The bill as amended became No. 9 of the Acts of 1865. It provided, substantially as now appears in G. L. 1562 and 1564, that between the time of taking the appeal and the first day of the term to which it is taken the chancellor should have "full power and jurisdiction of a court of chancery for making in such cause all necessary interlocutory orders, on motion and notice thereof, notwithstanding such decree and appeal"; and that thereafter while the cause was pending in the Supreme Court it should have like jurisdiction "for making such interlocutory orders * * * as the circumstances of the case render necessary." The phraseology adopted in the revision of 1880 and since followed, empowering the Court to make such interlocutory orders "as the circumstances of the case require," does not change the power conferred. The authority granted is such only as may be necessary in the particular case. The language implies authority not previously invested in either court. The grant of power being thus limited, it is not to be presumed that the Legislature intended thereby to transfer any jurisdiction already available existing in the court of chancery. It is clear that it was not intended by this legislation to curtail the jurisdiction of the chancellor, but rather to enlarge his jurisdiction to cover the interim between the taking of the appeal and the subsequent sitting of this Court. It is equally clear that it was not intended thereby to extend the appellate jurisdiction beyond what should be necessary to give the Court full control of the matters brought up by the appeal.

The statement in our decisions that the whole case is brought up by the appeal is taken by petitioner's counsel as equivalent to a holding that the court of chancery has no further jurisdiction in the matter. This is an unwarranted assumption. Wherever the statement occurs it is subject to the qualification, implied if not expressed, that the appeal brings up for review questions of law only. *Essex Storage Electric Co., Inc.* v. *Victory Lumber Co.*, 93 Vt. 437, 444, 108 Atl. 426, and cases cited. All questions litigated in the court below which affect the final decree, regardless of the party raising them, are brought to this Court by the appeal. It is in this sense that the expression "the whole case" is used. The appeal vacates the decree and brings up such litigated questions for review, but it does not follow that the appeal leaves the court of chancery without jurisdiction to conserve property, the subject-matter of the litigation, of which it has taken control through its receiver. An examination of the authorities dispels any possible doubt that may have existed respecting the matter.

[5, 6]   It is the well-settled rule that in chancery appeals this Court sits in error only. *Alfred* v. *Alfred*, 87 Vt. 542, 90 Atl. 580; *Hitchcock* v. *Kennison*, 95 Vt. 327, 115 Atl. 156. In such matters its powers have been said to be somewhat analogous to those of the House of Lords in England. *Slason* v. *Cannon*, 19 Vt. 219. Since the powers and jurisdiction of our court of chancery are the same as those of the court of chancery in England prior to the Revolution if not somewhat later, except as modified by the Constitution and laws of the State (G. L. 1487), we must look to the early English decisions for the determination of the question. Whatever may have been the former practice, from some time prior to 1772 it was the settled rule in England that on an appeal to the House of Lords the proceedings in the court of chancery were suspended only as to the particular matter appealed from. In *Lord Pomfret* v. *Smith*, Wyatts Prac. Reg. 35, decided in that year, a party having appealed to the House of Lords, moved the court of chancery that a receiver of the estates in question might be appointed. Lord Chancellor Apsley held that by bringing the appeal before the House, the Lord Chancellor's jurisdiction was suspended only as to the matter appealed from; but not totally, so as nothing could be done in any other part of the cause not appealed from. About thirty years later a

similar question arose in *Wardens of St. Paul's* v. *Morris,* 9 Ves. 316, wherein Lord Chancellor Eldon said that he had no idea that an appeal had the effect of stopping proceedings in the court below; that the cause of *Thellusson* v. *Woodford* was proceeding every day under orders upon motion, notwithstanding the pendency of the appeal; and that the clear understanding of the House of Lords was that the proceedings in the court of chancery were not stayed by an appeal. In 1807 a case occurred (*Burke* v. *Brown*) which induced the House of Lords to institute an inquiry with the view of finally determining the effect which it would be expedient to attribute to the reception of appeals in the House from decrees of courts of equity. The appellant presented a petition praying that a receiver might be appointed; and, in case their Lordships should consider all further proceedings in the court below not to be suspended by the appeal, for an order directing that the same be stayed. The petition was referred to a committee of Lords whose report and recommendations were approved of and adopted by the House. They found that according to a very ancient practice appeals to the House of Lords were considered as staying proceedings in the courts of equity, and that such practice in very remote times might obtain without much inconvenience in the administration of justice; but that, for a long course of years then past, the courts of equity had never forborne to proceed notwithstanding appeals, except in cases "in which their judicial discretion has induced them upon the application of parties interested to stay or modify such proceedings on account of such appeals," which practice had repeatedly "fallen within the knowledge and under the observation of this House, whilst the appeals were depending therein." The report continues: "The committee therefor conceive that according to the present practice of this House, appeals do not stay proceedings in such courts in the causes in which appeals are made, unless such courts should make order thereon to the contrary in causes in which they may be applied to for that purpose, or unless in special cases this House should interpose by special order; and the committee, attending to the nature of proceedings in courts of equity * * * * and the effect which the suspension by appeals of their proceedings must have, are of opinion that the practice as now understood cannot be departed from without introducing consequences the most oppressive to the suitors

in courts of equity, and the utmost inconvenience in the administration of justice in such courts.'' See Macqueen's Appellate Jurisdiction, 230-240. For a résumé of the history of the jurisdiction of the House of Lords relative to appeals from the court of chancery, see opinion of Walworth, Ch., in *Hart* v. *Mayor of Albany,* 3 Paige's Ch. Rep. (N. Y.) 381. It is thus seen that, by the highest authority in England (that of the House of Lords itself), at the time our statute defining the powers of the court of chancery was originally enacted an appeal such as we now have did not transfer the cause to the appellate court so as to wholly stay proceedings in the court below. There being nothing in the Constitution or laws of the State to the contrary, it follows that the appeal does not deprive the court of chancery of all authority in the premises and invest this Court with exclusive jurisdiction pending the appeal.

It is the settled rule in the courts of the United States and those of such of the states as treat an appeal in chancery as in the nature of a proceeding in error that the appeal does not remove the cause so as to give exclusive jurisdiction to the appellate court, but leaves in the court below jurisdiction in interlocutory matters not inconsistent with the power to reverse, vacate, or modify the final order or decree. 1 Clark on Receivers, § 692. The question has more frequently arisen in connection with applications for the appointment or removal of receivers pending an appeal. The doctrine of the federal cases is that the custody of the property or fund involved in the litigation remains in the lower court pending the appeal, and that such court may take proper measures through its receiver to preserve the same and protect the interest of the parties therein, notwithstanding the appeal. *Bronson* v. *Railroad Co.,* 68 U. S. (1 Wall.) 405, 17 L. ed. 616; *Goddard* v. *Ordway,* 94 U. S. 672, 24 L. ed 237; *Grant* v. *Phoenix Life Ins. Co.,* 121 U. S. 118, 30 L. ed. 909, 7 Sup. Ct. 849; *Merrimac River Sav. Bk.* v. *Clay Center,* 219 U. S. 527, 55 L. ed. 320, 31 Sup. Ct. 295; *Spring* v. *So. Carolina Ins. Co.,* 6 Wheat. 519, 5 L. ed. 320; Slaughter-House Cases, 10 Wall. 273, 19 L. ed. 915. The same principle is recognized and applied in numerous decisions of the state courts. The rule is thus stated in *Mitchell* v. *Roland,* 95 Iowa, 314, 63 N. W. 606: ''It is to be conceded that after a cause has been tried and decided by the trial court and an appeal duly taken, the court has no power to

hear the parties further upon any question that has been decided. Its jurisdiction is closed as to all the questions at issue. But the general jurisdiction of the court to protect and preserve the property which is the subject of the litigation is a collateral question, in no way involving the question presented to this court on appeal.'' It was held in *Morbeck* v. *Bradford-Kennedy Co.*, 18 Idaho 458, 110 Pac. 261, that the court of chancery has the inherent power to preserve the property in litigation pending an appeal; and in *Baughman* v. *Superior Court*, 72 Cal. 572, 14 Pac. 207, that an appeal by the plaintiff from a decree in favor of the defendant does not deprive the lower court of jurisdiction to hear and determine a motion by the defendant for the discharge of the receiver. It is stated in the *McKinnon-Young Co.* v. *Stockton*, 53 Fla. 734, 764, 44 So. 237, that the real effect of an appeal with supersedeas is to suspend the power of the court below to make any order tending toward an execution or enforcement of the decree appealed from, but that it does not interfere with the power of such court to make any order necessary for the preservation of the funds or property involved in the litigation pending such an appeal, when such orders do not tend towards an execution or enforcement of the order or decree appealed from, or to place the property or funds involved beyond the reach or control of the judgment or decree of the appellate court. *Chappell* v. *Clarke*, 94 Md. 178, 50 Atl. 527, was a bill in chancery against a trustee to enforce a trust. It was held that the appeal did not affect the power of the lower court to make further orders for the protection of the trust. For additional cases see *Moran* v. *Johnson*, 26 Grat. (Va.) 108; *Adkins* v. *Edwards*, 83 Va. 316, 2 S. E. 439; *Coleman* v. *Fisher*, 66 Ark. 43, 48 S. W. 807; *Beard* v. *Arbuckle*, 19 W. Va. 145; *Hutton* v. *Lockridge*, 27 W. Va. 428; *Brinkman* v. *Ritzinger*, 82 Ind. 358; *Chicago, etc. R. R. Co.* v. *St. Clair*, 144 Ind. 371, 42 N. E. 225; *Ashby* v. *Yetter*, 78 N. J. Eq. 173, 78 Atl. 799; *Hart* v. *Mayor of Albany*, 3 Paige's Ch. (N. Y.) 381; *Hitz* v. *Jenks*, 16 App. D. C. 530; High on Receivers, 127; Elliott on Appellate Prac., § 545. The principle deducible from the cases is summarized in Corpus Juris as follows: An appeal does not always deprive the lower court of all jurisdiction but the case is often regarded as pending in the court of original jurisdiction for the purposes of proceedings other than such as pertain to the appeal and the proper hear-

ing thereof; and collateral or incidental matters necessary for the preservation of the fruits of the ultimate judgment or the *status in quo* of the parties are not placed beyond the jurisdiction and interference of the lower court. For the latter purpose the lower court retains jurisdiction of the property or funds in controversy pending the appeal, and it may make all orders in reference thereto necessary to preserve it until the appeal is finally disposed of. But it cannot proceed in such a manner as to execute its judgment, place the property or funds beyond the control of the ultimate result of the litigation, or destroy the subject-matter of the appeal. 3 C. J. 1268.

[7, 8]   The exigencies of the instant case do not require us to go as far as some of the decisions referred to above. For present purposes it is sufficient to say, and we so hold, that the jurisdiction remaining in the court of chancery extends to the subject-matter of this petition and includes the making of proper orders during the pendency of the appeal looking to the care and preservation of the property in question and the protection of the rights and interests of the parties therein. The conclusion reached accords with the well-recognized doctrine that in the construction of statutes the presumption obtains that the Legislature has not intended to overturn long-established principles of law unless such intention clearly appears either by express declaration or by necessary implication; that is to say, that a statute is not to be given a construction at variance with established rules of procedure unless the intention so to do is apparent. *In re Sargood*, 86 Vt. 130, 136, 83 Atl. 718; *State* v. *Central Vt. Ry. Co.*, 81 Vt. 459, 71 Atl. 193, 21 L. R. A. (N. S.) 947.

It is unnecessary to consider whether this Court has any authority in the premises, or what the limits of its power to make interlocutory orders may be; for, however that may be, since the court of chancery has ample authority to deal with matters incident to the operation of the railway through the receiver, such matters are better left to that court which is always open and more readily accessible than this Court sitting *in banc* at stated terms. The merits of the question presented by the petition are not involved in our decision and nothing herein should be taken as intimating that the petitioner would in any event be entitled to the orders prayed for.

*Petition dismissed.*