## I. IRVING LEVIN *v.* MOUNTAIN FARMS, INC.

SUPERIOR COURT            HARTFORD COUNTY            FILE No. 115933

Memorandum filed December 31, 1959

*Apter & Nahum,* of Hartford, for the plaintiff.

*Ribicoff & Kotkin,* of Hartford, for the defendant.

TROLAND, J. This is an action for a declaratory judgment and for an injunction. Plaintiff is the owner of a parcel of land on the southerly side of Mountain Farms Road in the town of West Hartford. This parcel of land is the westerly portion of lot 6, block No. 101, on a map entitled "Mountain Farms Property of Mountain Farms, Inc. West Hartford, Conn. Scale 1"—100' Nov. 12, 1952 F.P. Molloy, Planning Engineer, West Hartford, Conn.," which map is on file in the West Hartford town clerk's office.

Lot No. 6 on above plan was conveyed by the defendant December 2, 1953, to Wilbur L. Pelkey and Lillian B. Pelkey by deed recorded in volume 264, page 32, of the West Hartford land records. The deed from defendant to the Pelkeys contained the following provision: "The grantees herein agree for themselves and the survivor of them and the heirs and assigns of the survivor of them, that no building shall be erected on said premises until the grantor herein, its successors and assigns shall have approved, in writing, the plans, design and location of the building or buildings to be erected on said premises." The language of above provision had been used in every conveyance made by the defendant and its predecessors in title of all lots in this tract since 1927. About seventy-five lots have been conveyed and about forty houses have been erected on lots in this development. Each of the conveyances contains the above-quoted language and no other words by way of restriction.

While the Pelkeys were the owners of said lot No. 6, the lot was partly in AA zone and partly in AAA zone, and upon their petition to the zoning commission of West Hartford for a change of zone

so that all of lot No. 6 would lie in the AA zone, such action was recommended and the town council of West Hartford enacted a zoning ordinance changing the zone line to put all of lot No. 6 in AA zone. Said lot No. 6 was thereafter conveyed by Wilbur L. Pelkey and Lillian B. Pelkey to Arvid D. Marcuson and Anna V. Marcuson, and the Marcusons in April, 1957, conveyed the land to Ferncliff Manor, Inc.

Lot No. 6 was a large lot. It was large enough in area to permit subdivision and the erection of two dwellings thereon, if the restrictions in the deed and the zoning laws of West Hartford did not prevent it. Ferncliff Manor, Inc., undertook to divide lot No. 6 into two lots, which were thereafter known as lot No. 6A and lot No. 6B. On August 9, 1957, Ferncliff Manor, Inc., conveyed that portion of said lot No. 6 now known as lot No. 6B to the plaintiffs by deed describing the land conveyed as follows: "Bounded Northerly by the southerly line of Mountain Farms Road, as shown on said map, 180.08 feet; Westerly by Lot No. 7, as shown on said map, 95.88 feet; Southerly by Lot No. 5, as shown on said map, 89.43 feet; and Easterly by the remaining portion of said Lot No. 6, 209.67 feet." The area of said lot is enough to meet the requirements of the zoning laws of West Hartford for erection of a dwelling thereon. Plaintiff paid $5000 for lot No. 6B.

Thereafter, the plaintiff made preparations to build a residence on said lot No. 6B. While some preliminaries with the building and zoning authorities were in progress, and prior to the submission to defendant of any plans by plaintiff, the defendant on June 18, 1958, notified plaintiff it would not approve the location of any building on the westerly portion of lot No. 6 in block No. 101, so long as the ownership of said lot No. 6 remains divided. There-

after, on or about November 13, 1958, plaintiff submitted plans to the defendant and requested approval of them. Defendant in accordance with its prior stated opinion refused to approve the plans.

The construction of the residence in accordance with the plans submitted by plaintiff would cost approximately $45,000. There are other residences in the tract which are similar in appearance to the house proposed to be built by the plaintiff. Defendant had no objection to the house itself. The defendant heretofore has approved the erection of three houses on lots No. 2 and No. 3 in block No. 101, said houses being built on lots smaller than those shown on the development plan.

The vital question in this case is whether the expressed provision in the deeds of defendant "that no building shall be erected on said premises until the grantor herein, its successors and assigns shall have approved, in writing, the plans, design and location of the building or buildings to be erected on said premises" can be construed to prohibit the subdivision of any of the lots as originally platted. It should be noted that the developer has inserted in its deeds no other restriction than the one quoted above.

The primary rule of interpretation of restrictive covenants is to gather the intention of the parties from their words, by reading not simply a single clause of the agreement but the entire context and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met. *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295. Another rule is that if the language of a restrictive covenant, when read in the light which the context and surrounding circumstances throw upon it, remains of doubtful meaning, it will be con-

strued against rather than in favor of the covenant. Id., 296.

It should be noted that a covenant such as we are considering here is in derogation of the common-law right to use land for all lawful purposes that go with title and possession. The sale of lots with reference to a map upon which they are plotted does not of itself create an implied covenant on the part of the vendor that the size of the remaining lots upon the map will not be changed. *Hickson* v. *Noroton Manor, Inc.*, 118 Conn. 180, 188. The defendant in this case has assumed that it had the power to change the size of lots, in approving as it did in March, 1955, the subdivision of lots 2 and 3 into three house lots.

Other than evidenced by the map and the quoted restriction, there is no other general plan of development, and no statement of standards to be met by grantees or imposed by the grantor, its successors and assigns, in accomplishing the purposes of any plan. If it can be assumed that the purpose of the original developer was to make the land which it owned desirable and attractive for residences, the instrument of conveyance should embody all the measures regarded as necessary to effectuate the result sought to be secured. The restriction of the deed as made cannot be enlarged by implication or extended beyond the original intent. To this extent the court rejects the authority relied on by the defendant, namely *Hannula* v. *Hacienda Homes, Inc.*, 34 Cal. 2d 442, 19 A.L.R.2d 1268, which in effect holds that the power to pass on plans necessarily includes the authority to determine that a portion of an original lot is not large enough for dwellings of the type found in the tract.

Although there are deficiencies in the restrictive covenant, such as a lack of limitation as to duration,

and a lack of expressed standards to be used either by the grantor or its successors in title through the years in the exercise of its reserved power of approval, the court cannot say that the reservation stated is void. The covenant, however, cannot properly be extended by implication to give the defendant the right to forbid the subdivision of any of its lots previously sold, or to permit the defendant to prevent, by withholding its approval, the erection of any dwelling on a subdivided lot. The refusal to approve submitted plans must be an action reasonably arrived at.

In this case lot No. 6B as a subdivision of lot 6 has approximately 18,000 square feet of area. It adequately meets the requirements of the zoning ordinance of West Hartford as to area for its AA residence district, and the proposed dwelling which plaintiff desires to erect can be located thereon so as to meet the requirements of said ordinance as to setback, side and rear yards, etc. The defendant has refused its approval of plaintiff's plans solely on the ground that the ownership of lot No. 6 remains divided. Such action under all the circumstances is arbitrary and unreasonable.

All persons having an interest in the subject matter, including seventy-six owners of lots in the Mountain Farms subdivision, have reasonable notice of the pendency of this action. None have appeared other than the named defendant.

The parties are advised: (1) The subdivision of lot No. 6, block 101, by Ferncliff Manor, Inc., into lot No. 6A and lot No. 6B was a proper exercise of its right of ownership of said land. (2) The withholding of approval, by the defendant, of the plans, design and location of the building proposed to be erected by the plaintiff on lot No. 6B, on the ground that the ownership of lot No. 6 was divided, was arbitrary and unreasonable. (3) The plans, design

and location of the proposed dwelling as submitted by the plaintiff to the defendant, were not in conflict with any ascertainable plan for the development of the Mountain Farms area, were not detrimental to the neighborhood, met the requirements of the town of West Hartford for a high-grade residential section, and should have been approved.

A mandatory injunction may issue requiring the defendant to approve the plans and location of the building on said lot No. 6B, as submitted.

Judgment may enter in accordance herewith and for the plaintiff to recover costs.