Argued June 6, affirmed July 12, petition for rehearing
denied September 5, 1961

SNASHALL ET UX *v.* JEWELL ET UX

363 P. 2d 566

*Donald H. Joyce,* Portland, argued the cause and submitted briefs for the appellants.

*Richard R. Carney,* Portland, argued the cause for respondents. On the brief were Carney & McCarroll, Portland.

Before McAllister, Chief Justice, and Sloan, O'Connell and Lusk, Justices.

O'CONNELL, J.

This suit was brought to enjoin defendants from maintaining a dwelling house which it is alleged violated a restrictive covenant contained in defendants'

deed against the construction of "more than one single story dwelling." The trial court denied the injunction but awarded plaintiffs damages in the amount of $2,500. Defendants appeal.

Both plaintiffs and defendants received their deeds from common grantors, Nosler and Powell, who owned a tract of land lying along S.W. Altadena Avenue and S.W. Washouga Avenue in the Council Crest area of Portland. The tract was located on a slope providing a hillside location for the construction of dwellings with a view of the Tualatin Valley. The area was referred to by Nosler and Powell, its developers, as "Faircrest" before it was platted and eventually it was platted under that name.

The deeds to other lots in the development which were executed before and after the execution of the deeds to plaintiffs and defendants contained building restrictions similar to those in defendants' deed forbidding the erection of "more than one single story dwelling." These deeds, and defendants' deed, also contained a covenant that building plans were required to be approved by the common grantors "for conformity and harmony of external design with existing structures and to provide maximum view for surrounding property." In some of the deeds the restrictive covenants were simply entitled "restrictions," whereas in others they were referred to as "Faircrest Restrictions." In the deed to the first lot conveyed out of the area along S.W. Altadena Avenue, in addition to the restrictions referred to above, there was also a covenant "that upon sale of surrounding tracts in Faircrest, the above restrictions will be minimum restrictions included in such conveyances."

Plaintiffs received their deed after fourteen other lots had been conveyed out of the tract. Plaintiffs

deed did not contain any express building restrictions; all of the other deeds executed before and after the execution of plaintiffs' deed did contain the express restrictions. However, plaintiffs' deed did make reference to the restrictions for in plaintiffs' deed the grantors covenanted that the lot was free from all encumbrances, the covenant being qualified by the following clause: "except building restrictions, set back lines, zoning ordinances and easements, if any of record."

Defendants' deed was executed on March 13, 1959, and was the next deed after plaintiffs' in the chronology of the conveyances out of the tract. Defendants' deed contained the restrictive covenants found in the other deeds. Plaintiffs' and defendants' lots adjoin.

When plaintiffs observed that defendants' dwelling was being constructed in a manner which indicated a possible violation of the restriction limiting construction to one story dwellings they made their objection known to defendants. Defendants' attorney asked plaintiffs to withhold filing suit until he had time to study the matter.

Subsequently, defendants deeded their lot back to Nosler and Powell and the latter forthwith reconveyed the lot to defendants, the deed containing restrictive covenants worded differently from that contained in the deed first executed to them, the modification, if effective, permitting the type of dwelling constructed by defendants.

■ Defendants assert that the covenant contained in defendants' deed was not intended to benefit plaintiffs who, as we have observed above, obtained their deed prior to the execution of the defendants' deed. In *Rodgers v. Reimann*, 227 Or 62, 361 P2d 101 (1961),

recently decided, we discussed at some length the theories upon which a prior grantee may maintain an action for a breach of covenant by a subsequent grantee taking from a common grantor. In the Rodgers case there was no evidence of a general building scheme and we held that in absence of such a scheme the prior grantee would be required to prove that, in imposing a restriction on a lot subsequently conveyed, it was the common grantor's intention to benefit the lot previously conveyed. However, we pointed out that where there is proof of a general building scheme the intention to benefit the lot previously conveyed is implied, assuming of course that the lot is a part of the tract embraced in the common plan.

■ Defendants contend, however, that there was no proof of a general restrictive plan in the case at bar. They assert that the deeds executed prior to the execution of the deeds to plaintiffs and to defendants conveyed out only lots in the southerly portion of the tract owned by Nosler and Powell and that those lots formed a unit in themselves, separate and apart from the lots which made up the northerly part of the tract in which both plaintiffs' and defendants' lots are located. We think that the evidence adequately shows the intention to establish a general plan of restrictions for the entire tract out of which Nosler and Powell made the several conveyances. The unity which defendants see in the southerly portion of the larger tract is based for the most part on the fact that an intersecting street (S.W. Washouga Avenue) running east and west penetrates the tract and thus separates a part of the tract. But the intersecting street does not extend all the way through the tract; the lots along the western edge of the tract (in which part of the tract both plaintiffs' and defendants' lots are located)

are not separated by the intersecting street. A diagram of the tract is set out in the margin. Defendants' lot abuts the western side of S.W. Altadena, north of S.W. Washouga and is designated as lot 2 on the diagram. Plaintiffs' lot adjoins the north side of defendants' lot.

■ If any part less than the whole of the tract can be said to have a unity relevant to the purposes of the building restrictions, that part would be the westerly tier of lots in which both the plaintiffs' and defendants' lots are located. However, we interpret the evidence as establishing a general building scheme for the entire tract. Therefore, the restrictive covenants were binding upon defendants not only with respect to persons who purchased lots in the tract subsequent to defendants' purchase, but also with respect to prior purchasers, including plaintiffs.

We have assumed that defendants had notice of the building restrictions affecting the lots in the Faircrest tract. The evidence clearly supports this assumption. The first deed from Nosler and Powell to defendants contained essentially the same covenants as expressed in the other deeds previously executed. Defendants knew that the other lots in the tract were similarly restricted. Defendants were aware of the general development scheme and the restrictions were contained in all deeds except that of the plaintiffs. With respect to the plaintiffs, defendants knew that the plaintiffs' lot was within the tract and plaintiffs' home, which was constructed in conformance with the restrictions, was built at the time defendants purchased their lot. Although the plat of the tract was not recorded until 1959 defendants knew that Nosler and Powell were selling lots out of the tract and, as their own deed recited, plans for construction were required

to be approved by the common grantors "for harmony of external design with existing structures and to provide maximum view for surrounding property." Further provisions of the restrictive covenants contained in defendants' deed amply apprised defendants that their lot was a part of a general scheme and that the restrictions were imposed for the benefit of all parcels within the tract. In the provision requiring approval of plans by Nosler and Powell it is specified that the requirement shall exist only until January 1, 1970, but that at that date a majority of owners subject to the covenants may designate an "authorized representative or representatives" to exercise the same supervisory powers presently vested in Nosler and Powell. The restrictions further provided: "These covenants are to run with the land and shall be binding on all the parties and all persons claiming under them."

■■ We noted above that defendants, after receiving their deed from Nosler and Powell, acting upon the advice of counsel, reconveyed their lot to Nosler and Powell and took back another deed purporting to modify the building restrictions. This maneuver did not, however, operate to change the binding effect of the restrictions contained in the original deed because the covenants which became operative upon the execution of the first deed to defendants inured to the benefit of the other lot owners in the tract and would continue to bind defendants as to those other owners unless the latter were to release defendants from the obligations of the covenants. Defendants treat the deed provision calling for the grantors' approval of building plans as vesting in the grantors a dispensing power permitting the lifting of the restriction on any lot at the will of the grantors. We do not so construe the provision; it was intended to provide machinery in

the aid of the enforcement of the covenants rather than to provide a means by which the common plan could be weakened by modification. It is manifest from the content of the restrictive covenants that they were imposed for the benefit of the owners of the several lots within the tract rather than for the personal benefit of the grantors.

■ For reasons not explained in the record plaintiffs' deed did not contain building restrictions. This did not prevent plaintiffs from enforcing the covenants contained in the defendants' deed as it was the intent of the grantors that the restrictions were to benefit all of the other parcels in the tract, and defendants entered into the covenants with notice that they were to have this effect. *Rodgers v. Reimann*, 227 Or 62, 361 P2d 101, 102 (1961). Thus, by reason of either the theory of third party beneficiary or the theory of implied reciprocal servitude, plaintiffs are entitled to enforce the restrictive covenant contained in defendants' deed. *Rodgers v. Reimann*, supra, 361 P2d at 104-105. And, since plaintiffs took their deed with notice of the general building scheme and its attendant restrictions, the fact that the restrictions were not expressed in their deed does not prevent the other owners from enforcing the restrictions against plaintiffs. *Duester v. Alvin*, 74 Or 544, 551-552, 145 P 660 (1915); *Turner v. Brocato*, 206 Md 336, 111 A2d 855 (1955) (able opinion by Hammond, J.); 2 American Law of Property (1952) § 9.33.

■ Finally, defendants contend that their dwelling house was not more than one story and that, therefore, they did not violate the deed restriction. There was considerable testimony and argument as to the definition of a "story" as distinguished from a "basement" and as to the distinction between a two-story house

and a split-level house. The trial judge reached the following conclusion:

"In the Court's opinion the definition of a single story dwelling in which one level is over another, consistent with the language of the two deeds, the purpose of the restriction, and the general plan or scheme of houses in the area, is a dwelling in which a substantial portion of the lower level is below the finished grade of the site. Similarly, a basement would be defined as an area which has a substantial portion below the existing grade of the site.

"This is not a precise definition, but in this case, in which no part of the floor of the lower level was more than 18 inches below the finished grade, and a significant part of the floor was at the finished grade, it is the Court's opinion that it was not substantially below grade, did not constitute a 'basement,' and thus the dwelling of the defendants was more than a single story dwelling, contrary to the deed restriction."

We believe that the foregoing treatment of the matter by the trial judge was a reasonable interpretation of the restriction. Finding no error we must affirm the decree of the trial court.

Decree affirmed.