Argued March 8, affirmed March 28, 1963

# SMOKE ET AL *v.* PALUMBO ET AL

### 379 P. 2d 1007

*Russell R. Niehaus* argued the cause for appellants. With him on the briefs were Wheelock, Richardson & Niehaus.

*Wilber Henderson* argued the cause for respondents. With him on the brief was Donald Alderton.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, GOODWIN and LUSK, Justices.

GOODWIN, J.

This is an appeal by the owners of certain lots in Palumbo's First Addition (to the City of Portland)

from a decree dismissing their suit. Plaintiffs sought to impose restrictive covenants upon other lots, owned by the defendants, within the platted subdivision.

The subdivision consists of 34 lots. The plat was dedicated by the defendants Palumbo. The Palumbos began to develop the tract by building speculative houses for sale. After four houses had been built and did not appear to be readily salable, the Palumbos began selling lots. The entire subdivision lies in a part of the city zoned to permit multiple-residence use.

The plaintiffs have purchased or built single-family residences and now contend that the defendants are bound by an implied covenant to build nothing but single-family residences on the remaining lots. The defendants contend, to the contrary, that since nothing in any written instrument restricts the use of the lots to single-family dwelling houses, they are free to construct duplex or other multiple-family housing as they see fit. The trial court deemed the evidence insufficient to support the plaintiffs' prayer for relief.

■■ Where a general plan of development can be proven, reasonable building restrictions consistent with such plan and necessary to its implementation will be enforced in a proper case for the benefit of prior grantees even though such restrictions are omitted from the conveyances to the subsequent grantees of the common grantor. *Snashall et ux v. Jewell et ux,* 228 Or 130, 363 P2d 566 (1961). However, covenants are to be strictly construed against the restriction, and unless the use complained of is plainly within the provisions of the covenant, it will not be restrained. *Schmitt et ux v. Culhane et al,* 223 Or 130, 132, 354 P2d 75 (1960).

■ Ordinarily when a subdivider of land desires to create restrictions which will burden as well as bene-

fit all the lots in his subdivision, he creates the restrictions by recording a list of them in the appropriate public record. Reference is made to the recorded restrictions in each conveyance thereafter. In such cases, the courts have little difficulty in giving effect to reasonable restrictions, because the intent of the parties is clear. See *Snashall et ux v. Jewell et ux,* supra. Further, in such cases, the equities in favor of one seeking to enforce a restriction are not opposed by countervailing equities in favor of third persons who may have acquired their land without notice. Recording generally constitutes notice for such purposes. See 5 Powell, Real Property 187, 188, § 679 (1962).

■ One recording method frequently employed by subdividers is to list all the contemplated restrictions in the first deed conveying a lot to a grantee. Subsequent deeds then may incorporate by reference the restrictions found in the first deed. Such deeds thus give grantees the same notice as would be given by a reference to a plat or other record containing the restrictions. The case at bar, however, did not arise out of a plan memorialized in writing. Here we must examine circumstantial evidence in order to decide what the parties intended.

It must be noted that the original plat, as recorded, contained no restrictions whatever. Neither did any deed in the plaintiffs' chain of title contain a restriction, so far as the record reveals. The warranty deed from the Palumbos to the plaintiffs Smoke contains the following:

"* * * [F]ree from all incumbrances, except restrictions and reservations as of record [there were none]. and Residence to be of $25,000 valuation or better. Residence to be completed within

one year after starting. Building to be 20 ft. set back and at least 5 ft. side lines."

Similar restrictions are to be found in the deeds to other plaintiffs. The Smoke deed was recorded March 31, 1960.

The warranty deed to the defendants Grimm, recorded April 25, 1961, contains the following:

"\* \* \* [F]ree from all incumbrances, except restrictions and reservations of record. Buildings to be set 20 ft. back from front lot line and 5 ft. or more from side lines. Buildings to be completed within one yr. after starting. Buildings to be: if duplex $30,000.00—if residence $25,000 valuation or more. No more than a duplex on each lot."

The Grimm deed is similar to the deeds of other defendants.

■ Our cases, as well as other generally-recognized authorities, teach that the plaintiff must prove the existence of his right and the defendant's notice thereof before a court of equity will impose restrictions upon the lands of others. See *Rodgers et ux v. Reimann et ux,* 227 Or 62, supra; *Snashall et ux v. Jewell et ux,* 228 Or 130, supra; 5 Powell, Real Property, supra at 193. A similar burden is placed on a grantee who seeks to impose restrictions upon the lands retained by the grantor. The trial court held that there was a failure by the plaintiffs to prove a case for equitable relief against either the common grantor or the other defendants who, as grantees, intended to build duplex housing.

■ The plaintiffs in the case at bar had the burden of proving that the defendants Palumbo intended to create restrictions for the benefit of the entire subdivi-

sion. Until the plaintiffs have proved that much, there would be no need to inquire further into such questions as the notice, if any, which could be charged to other grantees who had been made defendants. In other words, if the plaintiffs failed in their proof against their original grantors, the Palumbos, that failure of proof would end the case. If, on the other hand, the plaintiffs did prove a case against the Palumbos, other questions would become material. It would not necessarily follow that equity would enjoin the other defendants, even if a building scheme should be established.

■ When the entire record is reviewed, the circumstantial evidence tending to prove the existence of a general plan of development, and hence of an intent by the Palumbos to create restrictive covenants, can be summarized as follows:

At the time the plaintiffs acquired their respective lots (during the early part of 1960) there were houses upon four of the 34 lots in the subdivision. All the houses were substantially of the value of $25,000, all were single-family units, and all were advertised as "restricted." One of the plaintiffs swore he was given to understand by an agent of the Palumbos that the word "restricted" meant "restricted to single-family dwellings." This evidence was denied by the Palumbos, and presented a question of fact, one of many in the case.

Opposed to evidence tending to show a general scheme of development that would restrict the entire tract of 34 lots to single-family units was the following circumstantial evidence:

The area within which the subdivision was situated was zoned for apartment houses, and indeed contained a number of such structures outside the boundaries of

the Palumbo subdivision, but visible from the subdivision. The recorded plat contained no restrictions whatever. The trial record revealed no restriction in any deed in the Palumbo chain of title. (The deeds given by the Palumbos to the plaintiffs contained only the restrictions we have quoted.) The reference in the plaintiffs' deeds to restrictions of record when none existed is at best only neutral evidence on the score of restrictions, if not indeed evidence that no restrictions were intended.

We believe that the plaintiffs failed to prove the existence of a scheme of development which unequivocally pointed to an intent by the developers to restrict all 34 of their lots to single-family dwellings. We need not decide in this case whether a greater number of finished houses of the type initially built by the Palumbos would have been proof of a development plan that would support the plaintiffs' theory. We do agree with the trial court that four such houses, when viewed in light of the written records, the Portland zoning ordinance which applied to the property, and the character of the surrounding neighborhood, were insufficient proof of a development plan to carry the plaintiffs to a decree in their favor. It is not necessary, therefore, to examine the other disputed questions of notice on the part of the defendants who claimed under deeds from the Palumbos or of reliance upon such a plan by the plaintiffs. In the absence of a proven development plan, it is not necessary to speculate whether the subsequent grantees of the Palumbos would have been liable to the plaintiffs in this case in any event.

■ When a restriction is important to the parties, they should express their covenant in writing. When the written instruments fail to include restrictions that easily could have been included, a court of equity

should exercise caution. The court should not impose restrictions until it is convinced by substantial evidence that such restrictions were intended. Here, the trial court viewed the property, and evaluated all the testimony as it came in. The trial court was in a better position to resolve doubtful inferences or ambiguous testimony than are we, confined as we are to a cold record.

Affirmed.