### Richard A. McDonough, et al. v. W. W. Snow Construction Co., Inc.

[306 A.2d 119]

No. 176-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

Motion for Reargument Denied June 27, 1973

438

*Kolvoord, Overton & Wilson,* Essex Junction, for Plaintiffs.

*Eric A. Shuppin, Esq.,* Essex Junction, for Defendant.

**Keyser, J.** The plaintiffs are residents and homeowners in a development located in Colchester, known as Laurel Hill North. They seek an injunction pursuant to V.R.C.P. 65 to enjoin further construction of a two-story house in the development by the defendant and to require the removal of the second story. They also seek to enjoin similar construction on adjacent lots owned by the defendant. The plaintiffs based their action on a restrictive covenant imposed on the land which provides:

> "All houses constructed westerly of Biscayne Heights will be restricted in height to one story, and shall have a roof pitch not to exceed four and one half inches in twelve inches."

The matter was tried by court, and findings of fact and conclusions of law were made. Pursuant to these, the lower court ordered the defendant, W. W. Snow Construction Co., Inc., to be permanently enjoined from any further construction of the second story and ordered it to be removed no later

than sixty days from the signing of the order. The court also established the grade on the lots owned by the defendant to be the grade as it then existed and ordered that no buildings may be constructed on the lots that exceed one level or story. Soon after, a motion to reopen the judgment was filed by the defendant. That motion was denied, and the defendant has brought this appeal.

At the time the plaintiffs purchased their lots from North Star Corporation, all of the lots in Laurel Hill North were subject to restrictive covenants of which the above-described covenant was one of them. The purpose behind the above-described covenant was to preserve the scenic beauty of the area, and, in particular, to protect a view of Lake Champlain and the Adirondack Mountains lying beyond.

In June, 1971, the defendant purchased four lots in Laurel Hill North from the North Star Corporation. At that time the defendant, through its president and duly authorized agent, was fully aware of the restrictive covenants imposed upon the land. Reference to these covenants was made in the deed from North Star Corporation to Snow Construction.

Laurel Hill North is set on the edge of Lake Champlain. The plaintiffs' residences, with the exception of plaintiff McDonough, are erected on a height of land known as Biscayne Heights which drops off rather sharply to the west to a flat area that stretches westerly to Lake Champlain. The elevation of the lots on Biscayne Heights falls away from the street in a direction towards the lake, and, as a result, the residences are built into the bank; thus showing one level or story from the street, but showing two levels or stories from the rear. The average measurement of the first floor of these houses from the grade level on the street side is approximately 32.97 inches.

During 1972, the Snow Construction Company commenced construction of a house located on one of the lots located on the flat area west of Biscayne Heights. The first level or story of the house constructed by the defendant is even with the present grade of the lot and consists of a cement slab with partial cement block walls and partial wood walls. The first level or story rises to a height of seven feet, six inches above grade. In addition, the defendant was in the process of con-

structing a second level or story for living purposes on top of the first story before this action was commenced.

After the defendant commenced construction of the two-story house, its president, Walter Snow, attended a conference during which he admitted knowledge of the restrictive covenants, but stated the covenants were no problem to him and he intended to proceed with the construction of this house and others of a similar nature on the other lots.

The house constructed by the defendant is not built into a bank, and the existing grade around the house at the time of the suit was approximately level. However, it was the defendant's intention to partially fill above the grade level around the house so at least a portion of the second level would not be more than 32.97 inches above the new grade. Assuming the roof pitch of the defendant's house was four and one-half inches in twelve, it would still be at least one to two feet higher than other houses on the lake shore and would obstruct the view of the lake from a number of the plaintiffs' residences.

The issues brought to this Court for our determination are:

> I. Whether the restrictive covenant at issue in this case is a restriction on the height of a house rather than a restriction on the number of stories of a house.

> II. Whether the plaintiffs are precluded from requiring a literal application of the restrictive covenant to the defendant because of the way they have constructed their homes.

> III. Whether the plaintiffs are entitled to relief in the form of removal of the second level of the house or money damages.

> IV. Whether the defendant is entitled to a discretionary ruling to grant it a new trial.

It has been recognized in this state that restrictive covenants are enforceable in equitable actions, as the court will protect an established legal right.

▪ ██ The most recent Vermont case involving a restrictive covenant was *Welch* v. *Barrows,* 125 Vt. 500, 218 A.2d 698 (1966). In *Welch,* the plaintiff brought an action in the

old Court of Chancery seeking an injunction to enforce a restrictive covenant which provided no buildings were to be constructed in a certain area of Kimball's Point. In seeking to enforce the restrictive covenant, the plaintiff sought the removal of three cabins on the defendants' land; however, the controlling issue in the case was the area in which the restrictive covenant applied. From the court's discussion in *Welch* of the conditions which give rise to the enforceability of restrictive covenants, the principles governing their enforcement may be ascertained. Basic to the enforcement of restrictive covenants is that they are enforceable through the equitable relief afforded by an injunction. *Id.*, 125 Vt. at 502. See also *Queen City Park Association* v. *Gale*, 110 Vt. 110, 3 A.2d 529 (1938). Because the court is enforcing an established legal right, the relative hardships to the parties have no application to the award of final relief to the plaintiff. *Welch* v. *Barrows, supra,* 125 Vt. at 508.

In passing upon what the parties have decided to enforce, the agreement must be construed so as to give effect to the intention of the parties if it can be gathered from the language used when interpreted in connection with, and in reference to, the subject matter and purpose sought to be accomplished at the time the instrument was executed. *Welch* v. *Barrows, supra,* 125 Vt. at 504. This principle is illustrated in *Latchis* v. *John,* 117 Vt. 110, 85 A.2d 575, 32 A.L.R.2d 1203 (1952), where the court denied an injunction on the basis that a restrictive covenant providing no gas station or public garage shall be maintained on the lands did not encompass a fruit stand maintained on the lands by the defendant.

Another principle to be considered in the enforcement of restrictive covenants is that by virtue of appearing in the deed the defendant knew or should have known of the restrictive covenant, and under such circumstances the defendant acted at its own peril without first obtaining a resolution of the covenant. *Welch* v. *Barrows, supra,* 125 Vt. at 508–09. Moreover, he who takes land with notice of such a restriction will not in equity and good conscience be permitted to act in violation of the restriction. *Welch* v. *Barrows, supra,*

125 Vt. at 509. *Queen City Park Association* v. *Gale, supra,* 110 Vt. at 118.

Applying these principles to the case at bar, it is quite apparent the plaintiffs sought an injunction to enforce a restrictive covenant which imposes limitations upon the very activity in which the defendant sought to engage. Moreover, the defendant knew of the restrictive covenants and still proceeded in the erection of the house without obtaining a resolution of the disputed rights.

Restrictive covenants limiting the height of houses to one story have been held to be enforceable for the purpose of protecting a view. The closest Vermont case to that at bar appears to be *Fuller* v. *Arms,* 45 Vt. 400 (1873), where what the court characterized as a restriction in a deed, rather than a covenant, limited construction on the lot to a dwelling house and outbuildings for the same. The grantor of the lot lived across the road and enjoyed a view from above the lot which he did not want obstructed after he sold it. The eventual purchaser of the lot brought an action to have the restriction set aside, and the Court refused, saying at pp. 407–408 that a view may be protected as any other interest.

In an action between adjacent landowners, the court in *King* v. *Kugler,* 197 Cal.App.2d 651, 17 Cal. Rptr. 504 (Dist. Ct. App. 1961), enforced a restrictive covenant limiting single family dwellings to not more than "one story in height" when it enjoined the defendant from constructing a garage with room overhead. In enforcing the restrictive covenant, the court found the purpose of the covenant to be to protect the view, and in addition, found nothing vague, ambiguous, or uncertain in the meaning of the restrictive phrase. *Id.,* 17 Cal. Rptr. at 507–08. *Cf. Seligman* v. *Tucker,* 6 Cal. App.3d 691, 86 Cal. Rptr. 187, 191–92 (1970).

A restrictive covenant forbidding the erection of "more than one single story dwelling" was enforced by the court in *Snashall* v. *Jewell,* 228 Or. 130, 363 P.2d 566 (1961), when it was found by the court to be for the purpose of protecting a view and the defendant was in violation of it. See also Annot., 92 A.L.R.2d 872 (1963). In construing the term "story", the court in *Snashall* used as its reference point the grade to determine if the lower level was a basement. *Snashall* v. *Jewell, supra,* 363 P.2d at 571.

█ Applying the above-cited cases to the facts at bar, it is apparent the restrictive covenant at issue is clear on its face when it limits the houses built in Laurel Hill North to one story in height. It is also apparent in light of the purpose of the restrictive covenant that by limiting the height of the houses to one story, the purpose of the covenant to preserve a view is fulfilled. Moreover, it is also apparent the lower court used grade as its reference point to determine if there were basements in the plaintiff's homes, and if the defendant's house was two levels or stories. For these reasons it is obvious the covenant limits the height of a house by restricting the number of stories, and does not serve, as the defendant contends, to limit only the height of the houses without reference to the number of stories thereof.

█ The defendant maintains that the plaintiffs are precluded from requiring a literal application of the covenant to the defendant because of the way they have constructed their own homes. The defendant argues this has arisen because the first story or level of the plaintiffs' houses averages to 32.97 inches above grade, and once the defendant finishes grading its house, a portion of the second level will be no more than 32.97 inches above grade. Finding Number 14 which is not challenged by the defendant as being clearly erroneous states:

> "14. That the Defendant's house under construction is not built into a bank, but the grade as it now exists is approximately level on all four sides thereof."

Thus, in making its argument, the defendant ignores the one essential difference between its house and those of the plaintiffs, that being the difference in grade.

█ The defendant contends that because the plaintiffs have violated the restrictive covenant, having built their houses with two levels or stories, they have abandoned it and are precluded from enforcing it. However, because the plaintiffs have not constructed their houses similar to the defendant's, does not constitute waiver or abandonment of the covenant. The defendant makes the same assumption in this portion of the second issue as it did in the previous portion which was that the house being constructed by the de-

fendant is similar to those of the plaintiffs. The question of waiver or abandonment is one of fact, the burden of proof of which is on the defendant. *Welch* v. *Barrows, supra,* 125 Vt. at 507. This burden was not sustained. The record does not support this contention of the defendant.

The defendant next argues that it is not the law of Vermont to require it to remove the second story of the house, and in support of that position contends the proper remedy is set forth in *Thompson* v. *Smith,* 119 Vt. 488, 129 A.2d 638 (1957). In *Thompson,* the Court was called upon to enjoin the construction of a motel because of a sideline violation incorrectly allowed by a municipality. The local zoning ordinance in that municipality prescribed that the motel was to be twenty-five feet from the lateral boundary line, and the motel was being constructed ten feet from the boundary line. In that context, the Court weighed the relative hardships and awarded damages rather than injunctive relief. *Id.,* 119 Vt. at 509–10.

The case at bar involves a violation of a restrictive covenant rather than that of a zoning ordinance, as was the situation in *Thompson* v. *Smith, supra.* For this reason, we are governed by the principles pronounced in *Welch* v. *Barrows, supra,* rather than those in *Thompson* v. *Smith, supra.* When discussing the nature of relief to be given to the plaintiff, the Court in *Welch* v. *Barrows, supra,* 125 Vt. at 508, stated: "Whether there will be a greater hardship on the defendants than benefit to the plaintiff has no application here to the award of final relief to the plaintiff for the protection of established legal rights." With that in mind the Court in *Welch* v. *Barrows, supra,* went ahead and decreed an injunction to be the proper relief to be awarded. See also *Queen City Park Association* v. *Gale, supra,* 110 Vt. at 118.

In the context of the case at bar, it must also be remembered that the defendant had notice of the restrictive covenants and was also informed by the plaintiff they intended to enforce them and protect their view. Thus, the defendant was forewarned of an impending suit to test its right to add a second story to the house. In spite of this the defendant elected to proceed with construction of the house in utter disregard of what its rights were to do so without first obtaining a resolution of the disputed rights. Under these

circumstances, it can only be said that it proceeded at its own peril, and, as a consequence, an injunction is the proper relief. Under the facts of this case, the plaintiffs are entitled to an injunction requiring the defendant to remove the second story or level of the house.

Finally, the defendant moves for a discretionary ruling to grant a new trial to prevent a failure of justice.

In a shotgun approach, the defendant argues that for a multitude of reasons it was dealt an injustice by the lower court and should be granted a new trial.

The defendant attacks the order of the lower court as not being foreseeable, yet it was precisely the relief sought by the plaintiffs in their prayer for relief. The order is also attacked by the defendant as being unintelligible, yet it was the only way the plaintiffs could protect the view that the restrictive covenant sought to provide. The defendant feels the order precludes the use of its lands for the type of dwelling appropriate to Laurel Hill North, but this fails to take into consideration the defendant is not precluded from building single story dwellings. The defendant now asserts the evidence introduced at the trial discloses those lots on the lower portion of the development have a water problem, thereby requiring fill and limiting the depth to which a foundation may be laid. But the evidence also discloses that other homes have been built in the same area as the defendant's lot.

In an argument exactly the same as was raised by the defendant below in its motion to reopen the judgment, the defendant argues it did not discover the Town of Colchester public building restrictions at the time of trial, and in a new trial will be able to strengthen its position by introducing them. Evidence may be grounds for relief when, under V.R.C.P. 60(b), it could not have been discovered by due diligence in time to move for a new trial under V.R.C.P. 59(b). But that is not the situation here as the building restrictions were admitted into evidence on trial by plaintiffs' Exhibit 2 entitled "Addenda to Restrictive Covenants" and, therefore, was before the trial court.

The defendant argues the Court should remand the case for a new trial and in support of this position relies upon *State* v. *Cain & Burnett*, 126 Vt. 463, 236 A.2d 501 (1967).

The conditions giving rise to the remand for a new trial in that case differ considerably from those here because there the case was tried on a mistaken view of the law. Here the lower court correctly applied the law to the facts.

A discretionary ruling to grant the defendant a new trial is not warranted here because there has been no failure of justice.

A review of the record demonstrates that the evidence supports the findings and the findings support the judgment. In view of the findings and that the Vermont law governs the rights of the parties, there is no error.

*Judgment affirmed.*

### On Motion to Reargue

**Keyser, J.** Pursuant to V.R.A.P. 40, the defendant-appellant, W. W. Snow Construction Company, Inc., has timely moved the Court for reargument of this cause. In its motion, the defendant contends that this Court overlooked an oral stipulation embodied into an unappealed contempt order entered by the lower court subsequent to the defendant's appeal. It is the defendant's contention that the stipulation revises the order granting the permanent injunction from which it previously took an appeal.

The facts giving rise to this motion commence with the order of the lower court permanently enjoining the defendant from any further construction of the second story of a house and further ordering it to be removed no later than sixty days from the date of the order, August 29, 1972. Soon after, on September 10, 1972, the defendant filed a notice of appeal from that order, and the matter was placed before this Court.

During the course of this appeal the plaintiff, on December 12, 1972, filed a contempt petition with the lower court alleging that the defendant continued with contruction of the house in violation of that court's order of the previous August. The lower court held a hearing on the petition, and on January 29, 1973, found the defendant to be in contempt, but wisely stayed any punishment for the contempt until this Court disposed of the matter. Also contained within the lower court's order of January 29, 1973, was the previously mentioned stipulation, which provides as follows:

"Per stipulation of the parties, the defendant may proceed with construction on any of its structures or lots provided that defendant can show that in any event the highest point of any completed structure will not exceed a plane measured from two feet below the deck of G. W. Smith (as measured from the top surface of the deck) to a point located in the middle of the so-called McDonough house on Lot 33, which said point shall be 123 feet above sea level."

Neither party took an appeal from the January 29, 1973, contempt order of the lower court and this appeal continued its course culminating with the Court's opinion filed on June 5, 1973.

Central to a resolution of this motion is the relationship which exists between the trial court and this Court during the course of an appeal from an order of the trial court involving injunctive relief. Pursuant to V.R.C.P. 62(d), sufficient jurisdiction is retained in the trial court during the course of an appeal to suspend, modify, restore, or grant an injunction as it deems necessary to preserve the *status quo*. This equitable power which gives the trial court the ability to take action in and of an appeal is the same as that which used to be conferred upon the chancellor under 12 V.S.A. § 4602, and was elaborated upon by the Court in its well reasoned decision in *Westinghouse Electric Manufacturing Co. v. Barre & Montpelier Traction & Power Co.*, 97 Vt. 306, 309–17, 123 A. 201 (1924). Inherent in this limited reservation of jurisdiction is the contempt power of the trial court which it may use to enforce an injunction during the course of an appeal, and thereby preserve the *status quo*. See *Research Corporation v. Pfister Associated Growers, Inc.*, 310 F.Supp. 1377, 1379 (N.D. Ill. 1970); 7 J. Moore, Federal Practice ¶. 62.05 (1972). Indeed, it was pursuant to this power the trial court quite properly found the defendant in the case at bar to be in contempt.

Also embodied into the trial court's unappealed contempt order of January 29, 1973, was the stipulation which defendant contends has the effect of revising the order granting the permanent injunction it previously took an appeal

from. Because of the purported effect of the stipulation, the defendant now requests this Court to revise its judgment to conform with the stipulation, and remand the matter so the trial court may enter a new order. In view of the effect of this stipulation on the order granting the plaintiff a permanent injunction, it is apparent that the trial court was without jurisdiction to entertain the stipulation for its effect could only be one other than to preserve the *status quo*. V.R.C.P. 63(d). See also 2 R. H. Field, V. L. McKusick, L. K. Wroth, Maine Civil Practice § 62.2, at 87 (2d ed. 1970). Moreover, it should also be noted that the contempt order was an appealable order which could have been consolidated with the other appeal, and neither party chose to do so. Compare *Brooks* v. *Brooks,* 131 Vt. 86, 300 A.2d 531 (1973), with *Unicon Management Corp.* v. *Koppers Company,* 366 F.2d 199 (2d Cir. 1966.)

The type of relief which the defendant now requests, that being to remand this matter so that a new order may be made to conform with the stipulation, is relief which this Court is without jurisdiction to grant for the trial court did not have the jurisdiction to accept the stipulation in the first place. Moreover, until the legislature repealed 12 V.S.A. § 4605, the trial court was without jurisdiction to grant such relief after this Court affirmed an order granting injunctive relief. Now the trial court may entertain such a request for relief under proper conditions pursuant to V.R.C.P. 60(b) (5) and (6). 7 J. Moore, Federal Practice ¶. 60.27 (1972). See also *Developments in the Law—Injunctions,* 78 Harvard Law Review 944, 1080–86 (1965).

By reason of the foregoing, it is clear that nothing was misapprehended or overlooked by the Court, and, therefore the motion for reargument should not be granted.

*Motion for reargument denied. Let full entry go down.*