Robert M. HUEY et ux., et
al., Appellants,

v.

Tom H. DAVIS et ux., Appellees.

No. 12664.

Court of Civil Appeals of Texas,
Austin.

Oct. 5, 1977.

Rehearing Denied Nov. 2, 1977.

Doren R. Eskew, Eskew, Brady Womack
& Muir, Austin, for Robert M. Huey, et ux.

David L. Tisinger, Austin, for David B. Barrow and Austin Corp.

Tomas H. Davis, Byrd, Davis, Eisenberg & Clark, Austin, for appellees.

O'QUINN, Justice.

Appeal in this cause is from an order of the district court denying plaintiffs below an injunction to arrest construction of a dwelling in a residential subdivision in claimed violation of certain covenants and restrictions impressed upon all lots in Northwest Hills, Section 7, as approved by the City of Austin.

David B. Barrow, like plaintiffs, a resident of the subdivision, and also developer of the area, together with Austin Corporation, developer and holder of title to all lots when conveyed to lot owners, intervened below after the trial court denied plaintiffs an injunction. Plaintiffs are Robert M. Huey and wife, owners and residents of a lot adjoining the lot owned by Tom H. Davis and wife, the defendants, on which they undertook construction of the residence opposing parties contend was started and is under construction in contravention of the controlling covenants.

Appeal from the order denying injunction has been perfected by Huey and wife and by Barrow and Austin Corporation.

Paragraph 8 of the covenants and restrictions, discussed in more detail subsequently, provides in part, pertinent to this controversy, that "No building, wall or other structure shall be placed upon such lot until *the plan therefor and the plot plan have been approved in writing by the Developers.*" (Emphasis added). Davis and wife caused construction of their dwelling to begin and to proceed, despite the fact that approval of their house plans and plot plan had been denied by the developers.

Barrow, acting for the developers disapproved the plans and plot plan and indicated changes necessary to obtain approval. It was after the plans had been disapproved by Barrow and Davis began construction without approval that Huey and wife brought suit seeking an injunction to prevent Davis and wife from continuing with construction.

Decision in this case turns on construction and application of the covenants appellants say appellees have violated.

The restrictions and covenants were placed on record by the developers in the deed records of Travis County in 1965 and in their entirety consist of ten numbered paragraphs initiated by the statement that the developers intend to " . . . impress all of the property included in Northwest Hills Section Seven Addition with the following restrictions, covenants, conditions and uses . . . "

The first four paragraphs pertain to "Designation of Use" (single family residential purposes); "Retention of Easements" (as indicated on recorded plat); "Temporary Structures and Garage Apartments" (prohibited); and "Separate Garages, Guest Houses, Etc." (permitted within limits when attached to main house "provided all other restrictions, covenants, conditions and uses herein are complied with").

Under paragraph 5 ("Minimum Plat Size") no structure may be placed on any lot or plat having "an average width of less than 70 feet." The "Size and Construction of Dwellings" is controlled in paragraph 6:

"All dwellings shall be of recognized standard construction. The dwelling erected on any plot shall cover not less than 1,500 square feet of floor area of which not less than 1,300 square feet shall be in the house proper, exclusive of garage and porches. Ornamental structures, fences and walls are permitted subject to approval in writing by the Developers, or in the alternative by the Architectural Committee referred to under Paragraph No. 8."

Minimum set-backs are prescribed under paragraph 7 titled "Set-Back, Front Line, Side Line and Rear Line" in this manner:

"No structure shall be located or erected on any lot nearer to the front plot line than twenty-five (25) feet, nor nearer than five (5) feet to any side plot line except that the total combined setback from both sides shall in no event be less

than fifteen (15) feet, nor nearer than fifteen (15) feet to the rear plot line."

The parties join issue on the limitation, if any, paragraph 7 has on paragraph 8 titled "Architectural Control and Building Plans," referred to also in paragraph 6 in relation to "ornamental structures, fences and walls."

Paragraph 8, under which authority the developers acted in declining to approve the Davis plans, is quoted here in full:

"For the purpose of insuring the development of the subdivision as a residential area of high standards, the Developers, or in the alternative an Architectural committee appointed at intervals of not more than five years by the then owners of a majority of the lots in Northwest Hills Section Seven Addition, reserve the right to regulate and control the buildings or structures or other improvements placed on each lot. No building, wall or other structure shall be placed upon such lot until the plan therefor and the plot plan have been approved in writing by the Developers. Refusal of approval of plans and specifications by the Developers, or by the said Architectural Committee, may be based on any ground, including purely aesthetic grounds, which in the sole and uncontrolled discretion of the Developers or Architectural Committee shall seem sufficient. No alterations in the exterior appearance of any building or structure shall be made without like approval. No house or other structure shall remain unfinished for more than two years after the same has been commenced."

Appellees contend that under paragraph 7, providing minimum distances from front, rear, and sides of a lot at which a dwelling may be placed, " . . . a house may be located anywhere on the lot so long as it does not violate these specific restrictions." Appellees argue, "There is nothing in these restrictions that would even suggest or put purchasers on notice that they must comply with any other restrictions concerning the proximity of the house to the rear plot line." This argument derives from the fact that the Davis dwelling under construction is 25 feet from the rear of the lot and not in violation of the 15-foot set-back required by paragraph 7, whereas the developers suggested the dwelling be placed further toward the front of the lot but not encroaching upon the 25-foot front set-back.

Appellants contend that although paragraph 7 is binding, both on the lot owner and the developers, the distances there established are minimum only, and that on that portion of the lot within the set-back lines, the developers have "sole and uncontrolled discretion" to refuse approval of plans "based on any ground . . . the Developers . . . shall deem sufficient," as covenanted for in paragraph 8. It follows that, with covenants binding on lot owners and developers alike, the developers under paragraph 8 would not have authority to require the lot owner to invade the set-back limits fixed by paragraph 7. See the well reasoned opinion of late Justice Norvell in *Johnson v. Dick*, 281 S.W.2d 171 (Tex.Civ.App. San Antonio 1955, no writ).

We agree with the contention of appellants. We will reverse the judgment of the trial court and remand the cause to the district court with instructions to enjoin further construction by appellees of the dwelling until the plans, including plot plans, are approved by the developers of the subdivision.

Paragraph 8, set out above, reserves to the developers, or an architectural committee, "For the purpose of insuring the development of the subdivision as a residential area of high standards . . . the right to regulate and control the buildings or structures or other improvements placed on each lot." Appellees do not challenge validity of this covenant, nor validity of any of the covenants and restrictions pertaining to the subdivision. In the main they contend only that paragraph 7, providing minimum set-back lines, proscribes action of the developers in approving or in refusing approval of house and plot plans, as to location on the lot, when acting under authority reserved to the developers by paragraph 8.

Appellants Huey and wife acquired their lot from the developers and, after obtaining approval of their plans, constructed their home on the lot adjoining the Davis lot on the east. Some time subsequently, Davis and wife acquired their lot from a prior purchaser and proceeded with construction of a dwelling on the lot without first obtaining approval of the plans from the developers. The covenants and restrictions as recorded in 1965 are uniformly applicable to all lots, and it is elementary that each purchaser is subject to the covenants, since every purchaser buys with actual or constructive notice of the covenants and restrictions.

It has long been the established rule in this state that when restrictive covenants are imposed pursuant to a general scheme or plan for development of a defined tract of land, there exists an inducement for each purchaser to buy, and the agreement becomes part of the consideration. It follows that where there is a general scheme or plan, adopted by the original owner of a tract, for development of the property, and the elements of the plan are secured by covenants embodying the restrictions, the covenants are valid and binding on the developer and all purchasers of lots. *Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497 (1922).

In *Curlee* the Supreme Court announced the basic rule that: "The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal." (244 S.W. 498)

In stating the "correct rules" governing covenants in a restricted subdivision, the Supreme Court in *Curlee* quoted with approval from an earlier decision by the El Paso Court of Civil Appeals in *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex.Civ.App. El Paso 1914, no writ). Where the general plan for a subdivision has been " . . . designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold . . . " an inducement

to each purchaser to buy is formed, and such agreement becomes part of the consideration. "The buyer submits," the Court said, "to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots."

To this the Court, continuing to quote from *Hooper*, added, "The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers." (171 S.W. 272 and 244 S.W. 498)

The principle that covenants and restrictions pertaining to a subdivision may contain valid provisions for a committee or some other specified persons, having authority to pass on compliance with the covenants, has been recognized in *Johnson v. Dick, supra; Johnson v. Linton*, 491 S.W.2d 189 (Tex.Civ.App. Dallas 1973, no writ); and *Lovelace v. Bandera Cemetery Ass'n*, 545 S.W.2d 194 (Tex.Civ.App. San Antonio 1976, writ ref'd n. r. e.).

The requirement that consent of the developer, or architectural committee, be obtained prior to placement of any structure on a lot in the subdivision is clearly stated in paragraph 8. This is a recognized method " . . . by which guaranties of value and of adherence to a general plan can be accomplished and maintained." Perovich: *Validity and Construction of Restrictive Covenant Requiring Consent to Construction on Lot*, 40 A.L.R.3d 864, 870 (1971). A leading case in which this method was approved is *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P.2d 361 (1969). There the court asserted that such covenants have as their purpose " . . . protecting the present and future values of property located" in the subdivision. The covenant stated " . . . no building shall be erected,

placed or altered on any lot until the plans and specifications and a plan *showing the location of the structure* have been approved by an architectural committee." (Emphasis added) In reaching the conclusion that the covenant guarantees to the homeowner his house will be protected against adjacent construction that will impair its value and that a general plan of development will be followed, the court upheld validity of the covenant and rejected the argument that the covenant was unenforceable for vagueness.

Similar application of the principle of such covenants has been approved in other jurisdictions. *Levin v. Mountain Farms, Inc.*, 22 Conn.Sup. 14, 158 A.2d 493 (1959); *Syrian Antiochian Orthodox Archdiocese v. Palisades Associates*, 110 N.J.Super. 34, 264 A.2d 257 (1970); *Snashall v. Jewell*, 228 Or. 130, 363 P.2d 566 (1961).

The record shows that one of the matters of concern in the proposed location of the Davis dwelling is that if erected without relocation toward the front of the property as required by the developer, the house would substantially obliterate the view from the Huey lot of the common valley or wooded canyon upon the rim of which all lots in this subdivision are situated. In *Snashall v. Jewell, supra,* the court upheld an "approval covenant" which specifically mentioned that a consideration was to provide maximum view to surrounding property. Appellants contend that one of the inducements to buyers in the subdivision and one of the common advantages to be preserved by the covenants is the view and visual enjoyment of the scenery provided by the natural valley all lot owners share under the general plan. *Snashall* stands for the proposition that protection of the view is a valid consideration.

■ In general, where the common grantor of lots in a subdivision reserves to himself, or to another designated party, the power to consent to, or approve, a proposed construction, that restriction on free use is enforceable in court only if the exercise of such authority in a particular case is found to be reasonable and made in good faith.

See 40 A.L.R.3d 864, 879. We conclude that in this case the developer exercised the power granted under paragraph 8 in a reasonable manner and acted in good faith. Paragraph 7, prescribing set-back distances for each lot, provided a specific framework within which the developer had the right to approve or disapprove plot plans, and in this instance the developer did not go beyond the confines of that framework.

A leading case under which this principle was applied is *Hannula v. Hacienda Homes,* 34 Cal.2d 442, 211 P.2d 302 (1949). The rule stated in that case is that when a restriction prohibits construction without prior approval of plans and issuance of a permit by the subdivider, the subdivider may deny permission on any reasonable ground where the provision in question was a separately numbered paragraph which did not contain any other specific restriction, and where no other specific restriction among the covenants provided the limitation. In the present case the developer did not, in exercising powers granted by paragraph 8, impose a more burdensome set-back requirement on the Davis dwelling than the framework provided by paragraph 7.

■ It is an established principle of law in Texas that parties may agree or covenant that an architect or an engineer may be the judge of proper performance of a contract, and neither party may avoid the arbiter's conclusion on the subject without showing that the person so empowered was arbitrary, capricious, or unreasonable, or that in making the decision was guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise honest judgment. *State v. Martin Bros.,* 138 Tex. 505, 160 S.W.2d 58 (1942); *Austin Bridge Co. v. Teague,* 137 Tex. 119, 152 S.W.2d 1091 (1941); *City of San Antonio v. McKenzie Construction Co.,* 136 Tex. 315, 150 S.W.2d 989 (1941); *Estey Corp. v. St. Mary's University,* 470 S.W.2d 138 (Tex.Civ. App. San Antonio 1971, no writ); *Austin Bridge Company v. State,* 427 S.W.2d 925 (Tex.Civ.App. Austin 1968, writ ref'd n. r. e.); 10 Tex.Jur.2d *Building Contracts,* sec. 20, p. 23 (1959).

Ordinarily the term arbitrary is synonymous with bad faith or failure to exercise honest judgment. An arbitrary act would be one performed without adequate determination of principle, and one not founded in the nature of things. A fuller range of the arbitrary act, as determined by courts, finds summary in *Goodrum v. State*, 158 S.W.2d 81, 87 (Tex.Civ.App. Galveston 1948, writ ref'd w. o. m.).

In the present case we are unable to find that the developer acted in any manner suggesting unreasonable, irrational, arbitrary, or capricious treatment of the Davis application for approval of the dwelling and plot plan. On the contrary, it is clear that the developer sensibly sought to preserve the general plan for the benefit of all lot owners, pursuant to the broad powers vested in the developer under paragraph 8 of the covenants. The developer in no way sought to rewrite the set-back requirements of paragraph 7, which he would have no authority to do. To hold otherwise, we conclude, would be for this Court to attempt to rewrite the covenants by saying that the power under paragraph 8 is without meaning in view of the minimum set-back prescription contained in paragraph 7.

The judgment of the trial court is reversed. We hold that it was error to refuse to enjoin Davis and wife from continuing with construction of the dwelling which had not been approved by the developer under paragraph 8. We render judgment that the cause be remanded to the district court, with instructions to enter judgment enjoining Appellees Davis and wife from continuing with construction until the house and plot plans have been approved by the developer.

Meanwhile, to protect the jurisdiction of this Court and the subject matter of the case, appellees are ordered to cease all construction work on the dwelling and not resume work so long as the cause remains within jurisdiction of this Court.

PHILLIPS, C. J., not participating.